K. Winn Allen, P.C. (*pro hac vice pending*)
T.J. McCarrick (*pro hac vice pending*)
Saunders McElroy (*pro hac vice pending*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
United States
Telephone: +1 202 389 5000
Facsimile: +1 202 389 5200
winn.allen@kirkland.com
tj.mccarrick@kirkland.com
saunders.mcelroy@kirkland.com

Laura Vartain Horn (SBN 258485)
Bethany Lobo (SBN 248109)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
United States
Telephone: +1 415 439 1400
Facsimile: +1 415 439 1500
laura.vartain@kirkland.com
bethany.lobo@kirkland.com

*Attorneys for Defendants Meta Platforms, Inc., and WhatsApp LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BRYAN Y. SHIRAZI and NIDA SAMSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., WHATSAPP LLC, ACCENTURE PLC, and ACCENTURE LLP,<br><br>Defendants. | CASE NO. 26-CV-02615<br><br>**META PLATFORMS, INC., AND WHATSAPP LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS UNDER 9 U.S.C. §§ 3-4**<br><br>Complaint Filed Date: March 25, 2026<br><br>Judge: Honorable Rita F. Lin<br>Hearing Date: July 14, 2026<br>Time: 10:00 AM<br>Courtroom: 15, 18th Floor |

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY**

PLEASE TAKE NOTICE that on July 14, 2026, at 10:00 AM, or as soon thereafter as the matter may be heard, before the Honorable Rita F. Lin, United States District Judge for the Northern District of California, Defendants Meta Platforms, Inc. and WhatsApp LLC will and hereby do move the Court for an order compelling Plaintiffs to arbitration and staying proceedings pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3-4. This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, all other papers filed in this action, and the arguments of counsel.

DATED: May 11, 2026

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Laura Vartain Horn*

K. Winn Allen, P.C. (*pro hac vice pending*)
T.J. McCarrick (*pro hac vice pending*)
Saunders McElroy (*pro hac vice pending*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
United States
Telephone: +1 202 389 5000
Facsimile: +1 202 389 5200
winn.allen@kirkland.com
tj.mccarrick@kirkland.com
saunders.mcelroy@kirkland.com

Laura Vartain Horn (SBN 258485)
Bethany Lobo (SBN 248109)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
United States
Telephone: +1 415 439 1400
Facsimile: +1 415 439 1500
laura.vartain@kirkland.com
bethany.lobo@kirkland.com

*Attorneys for Defendants Meta Platforms, Inc., and WhatsApp LLC*

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ........ ii

STATEMENT OF THE ISSUES TO BE DECIDED ........ 1

INTRODUCTION ........ 1

BACKGROUND ........ 2

A. Plaintiffs' Assent to WhatsApp's Terms of Service ........ 2

B. Plaintiffs' Copycat Suit ........ 3

LEGAL STANDARD ........ 4

ARGUMENT ........ 5

I. THE COURT MUST COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS ........ 5

A. Plaintiffs Entered a Valid and Binding Arbitration Agreement Covering the Claims in the Complaint ........ 5

1. Plaintiffs Concede They Agreed to WhatsApp's Terms of Service ........ 5

2. WhatsApp's Terms of Service Provide for Arbitration of Plaintiffs' Claims. ........ 6

B. Plaintiffs' Must Arbitrate Their Claims Against Meta. ........ 7

C. Plaintiffs' Request for a "Public Injunction" Does Not Impact Arbitrability of Their Claims ........ 8

II. THE COURT SHOULD STAY PROCEEDINGS CONCERNING PLAINTIFFS' COMPLAINT ........ 10

A. Plaintiffs' Claims Against WhatsApp and Meta Must Be Stayed. ........ 10

B. Plaintiffs' Claims Against Accenture Should Be Stayed. ........ 10

CONCLUSION ........ 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfia v. Coinbase Global, Inc.*,
2022 WL 3205036 (N.D. Cal. July 22, 2022)....5

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....4

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)....6

*Ballard v. Corinthian Colleges, Inc.*,
2006 WL 2380668 (W.D. Wash. Aug. 16, 2006)....10

*Boucher v. All. Title Co., Inc.*,
127 Cal. App. 4th 262 (2005)....7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000)....4, 6

*Costless Wholesale, Inc. v. Amazon.com Servs. LLC*,
2023 WL 6224825 (C.D. Cal. Sept. 20, 2023)....6

*DiCarlo v. MoneyLion, Inc.*,
988 F.3d 1148 (9th Cir. 2021)....9

*Dike v. Zara USA, Inc.*,
672 F. Supp. 3d 822 (N.D. Cal. 2023)....5

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020)....5

*Dornaus v. Best Buy Co.*,
2019 WL 632957 (N.D. Cal. Feb. 14, 2019)....8

*Flora v. Prisma Labs, Inc.*,
2023 WL 5061955 (N.D. Cal. Aug. 8, 2023)....6

*Gonzalez-Torres v. Zumper, Inc.*,
2019 WL 6465283 (N.D. Cal. Dec. 2, 2019)....9

*Green Tree Fin. Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000)....4

*Hansen v. Ticketmaster Ent., Inc.*,
2020 WL 7319358 (N.D. Cal. Dec. 11, 2020)....5

*Hart v. Charter Commc'ns, Inc.*,
814 F. App'x 211 (9th Cir. 2020) .......... 7, 8

*Hill v. BBVA USA*,
2021 WL 2206477 (S.D. Cal. June 1, 2021) .......... 9

*Ionescu v. Extra Space Storage Inc.*,
2019 WL 3997480 (N.D. Cal. Aug. 23, 2019) .......... 9

*Kaplan v. The Athletic Media Co.*,
2023 WL 8587981 (N.D. Cal. Dec. 8, 2023) .......... 6

*Kohler v. Whaleco, Inc.*,
757 F. Supp. 3d 1112 (S.D. Cal. 2024) .......... 8

*Lag Shot LLC v. Facebook, Inc.*,
545 F. Supp. 3d 770 (N.D. Cal. June 25, 2021) .......... 8

*Lee v. Postmates Inc.*,
2018 WL 4961802 (N.D. Cal. Oct. 15, 2018) .......... 9

*Leyva v. Certified Grocers of California, Ltd.*,
593 F.2d 857 (9th Cir. 1979) .......... 11

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
363 F.3d 1010 (9th Cir. 2004) .......... 4, 7

*Luis v. SPS Techs., LLC*,
2023 WL 8870517 (C.D. Cal. Nov. 13, 2023) .......... 6

*Magana v. DoorDash, Inc.*,
343 F. Supp. 3d 891 (N.D. Cal. 2018) .......... 9

*Marselian v. Wells Fargo & Co.*,
514 F. Supp. 3d 1166 (N.D. Cal. 2021) .......... 7

*McGill v. Citibank, N.A.*,
2 Cal. 5th 945 (2017) .......... 8, 9

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) .......... 5, 6

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 10

*Neurosigma, Inc. v. De Salles*,
2014 WL 12803168 (C.D. Cal. Jan. 31, 2014) .......... 6

*United States ex rel. Newton v. Neumann Caribbean Int'l, Ltd.*,
750 F.2d 1422 (9th Cir. 1985) .......... 10

*NORCAL Mut. Ins. Co. v. Newton*,
84 Cal. App. 4th 64 (2000) ....................7

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ....................9

*Peterson v. Lyft, Inc.*,
2018 WL 6047085 (N.D. Cal. Nov. 19, 2018) ....................5

*PZZT AZ LLC v. Waste Connections of Arizona Inc.*,
2022 WL 19575807 (D. Ariz. May 4, 2022) ....................11

*Rappaport v. Fed. Sav. Bank*,
341 F. Supp. 3d 1039 (D. Ariz. 2018) ....................10

*Sam Reisfeld & Son Import Co. v. S.A. Eteco*,
530 F.2d 679 (5th Cir. 1976) ....................7

*Schoenduve Corp. v. Lucent Techs., Inc.*,
442 F.3d 727 (9th Cir. 2006) ....................6

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ....................6

*Smith v. Spizzirri*,
601 U.S. 472 (2024)....................10

*SolarPark Korea Co. v. Solaria Corp.*,
2023 WL 4983159 (N.D. Cal. Aug. 2, 2023) ....................10, 11

*SST Millennium LLC v. Mission St. Dev. LLC*,
2019 WL 2342277 (N.D. Cal. June 3, 2019)....................11

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016) ....................5

*Trout v. Comcast Cable Commc'ns, LLC*,
2018 WL 4638705 (N.D. Cal. Mar. 15, 2018)....................9

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*,
46 F. App'x 412 (9th Cir. 2002) ....................10, 11

*Walters v. Luxottica of Am. Inc.*,
2024 WL 661195 (C.D. Cal. Jan. 5, 2024) ....................6

*Wheeler v. LG Elecs. USA, Inc.*,
2024 WL 51353 (E.D. Cal. Jan. 4, 2024) ....................9

*Woods v. Airbnb, Inc.*,
2024 WL 4227746 (N.D. Cal. Sept. 17, 2024) ....................11

**Statutes**

9 U.S.C. §§ 1 et seq. .......... 1, 4, 10

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiffs' claims against WhatsApp and Meta must proceed to arbitration pursuant to the Federal Arbitration Act and the arbitration agreement in the WhatsApp Terms of Service.

2. Whether proceedings concerning Plaintiffs' complaint should be stayed pending the outcome of the arbitration of Plaintiffs' claims.

## INTRODUCTION

Plaintiffs—a putative class of WhatsApp users residing in the United States—brought this copycat lawsuit seeking to piggyback on earlier litigation filed in this district, *Dawson v. Meta Platforms, Inc. et al.*, Case No. 3:26-cv-00751-RFL (N.D. Cal.). Critically, though, the *Dawson* complaint intentionally excluded United States WhatsApp users because such users are subject to arbitration agreements under WhatsApp's Terms of Service. Plaintiffs here expressly allege that they entered into a contract with WhatsApp pursuant to the Terms, bring breach-of-contract claims explicitly premised on the Terms, and attach the Terms to their Complaint as an exhibit. In agreeing to the Terms of Service with WhatsApp, Plaintiffs agreed to arbitrate ***any*** dispute "relating to, arising out of, or in any way in connection with [WhatsApp's] Terms or [WhatsApp's] Services" on an individual basis and to waive any right to proceed in a class action. This broad arbitration agreement governs the present dispute. Based on the nature of their own claims, Plaintiffs should have been aware of their obligation to arbitrate them: the Terms of Service are the foundation for their entire suit, and the first section of those Terms spells out Plaintiffs' agreement to arbitrate in capitalized, bold text. Plaintiffs nevertheless pressed forward in filing a federal lawsuit, apparently prepared to ask this Court to ignore their unequivocal and binding arbitration agreements and allow them to proceed on behalf of a putative nationwide class. The Federal Arbitration Act and controlling law interpreting it require otherwise. Plaintiffs' claims against WhatsApp and Meta must be compelled to arbitration with proceedings in this Court stayed pending arbitration.

The Court should also stay Plaintiffs' claims against Accenture, pending the outcome of any arbitration. Plaintiffs named as defendants two entities associated with Accenture that allegedly performed contract work for WhatsApp and Meta, grouping them into only 2 of the 12 causes of action in the complaint. Yet, Plaintiffs made no allegations or claims against them based on any sort of independent conduct, only naming them as defendants in an apparent effort to achieve federal court jurisdiction for their putative class claims and avoid the arbitration procedures to which they are bound. The Court should

refuse Plaintiffs' attempt to dodge arbitration over their allegations as to WhatsApp's conduct and stay any remaining claims against Accenture. Doing so furthers judicial efficiency because any claims against Accenture are factually inseparable from Plaintiffs' claims against WhatsApp. Any other outcome would permit Plaintiffs to essentially subject WhatsApp by proxy to the very judicial, discovery, and class action procedures that the parties expressly agreed to bypass through arbitration. That would permit parties like Plaintiffs to litigate arbitrable disputes in federal court simply by naming as defendants ancillary non-signatory third parties—a result that would be plainly inconsistent with the FAA.

## BACKGROUND

### A. Plaintiffs' Assent to WhatsApp's Terms of Service

Plaintiffs are United States residents and account holders who claim to be regular users of the WhatsApp platform. Compl. ¶¶ 13-18. WhatsApp is a wholly owned subsidiary of Meta Platforms, Inc. *Id.* ¶ 20. As the complaint acknowledges, WhatsApp requires all individuals who create an account to agree to its Terms of Service. *Id.* ¶ 27. Plaintiffs further allege and concede that they agreed to the Terms of Service because they "clicked buttons signifying acceptance of WhatsApp's Terms of Service and thus entered into a contract with [WhatsApp and Meta] regarding the use of WhatsApp." *Id.* ¶¶ 203-05. Plaintiffs attach the latest version of the Terms to which they agreed as Exhibit 1 to their complaint.

The Terms of Service contain a provision titled "Special Arbitration Provision For United States Or Canada Users." Compl. Ex. 1 at 12-14. WhatsApp points users to this provision with bold, all-capitalized text in the first section of the Terms of Service titled "About Our Services":

> If you are a WhatsApp user located in the United States or Canada, our terms contain a binding arbitration provision, which states that, except if you opt out and except for certain types of disputes, WhatsApp and you agree to resolve all disputes (defined below) through binding individual arbitration, which means that you waive any right to have those disputes decided by a judge or jury, and that you waive your right to participate in class actions, class arbitrations, or representative actions. Please read the "Special Arbitration Provision For United States Or Canada Users" section below to learn more.

*Id.* at 4 (capitalization and emphasis modified). The arbitration provision details that WhatsApp users located in the United States and Canada agree "to waive the right to a trial by judge or jury for all Disputes, except for the Excluded Disputes;"[1] "that all Disputes (except for the Excluded Disputes), including those

[1] Under the TOS, "'Excluded Dispute' means any Dispute relating to the enforcement or infringement of your or our intellectual property rights (such as copyrights, trademarks, domains, logos, trade dress, trade secrets, and patents) or efforts to interfere with our Services or engage with our Services in

relating to, arising out of, or in any way in connection with your rights of privacy and publicity, will be resolved through final and binding arbitration;" and "not to participate in a class action" or "class-wide arbitration." *Id.* at 12-14. "Disputes" is defined to encompass any claim or cause of action "relating to, arising out of, or in any way in connection with our Terms or our Services." *Id.* at 9. Although the provision contains a procedure that users may follow to opt out of the agreement to arbitrate within 30 days by mailing a notice in writing, *id.* at 13, Plaintiffs do not contend they did. Indeed, despite attaching the Terms of Service as an exhibit to the complaint, which discusses various provisions of the Terms of Service at length and asserts a breach of contract claims based on the provisions of the Terms of Service, Plaintiffs make no mention of this arbitration provision.

**B. Plaintiffs' Copycat Suit**

Plaintiffs filed the complaint on March 25, 2026, two months after the complaint was filed in the *Dawson* litigation. Apparently aware of the pending *Dawson* litigation at the time of filing, Plaintiffs moved to relate the cases two days after filing suit. Dkt. 22, Case No. 3:26-cv-00751. The core allegations in each case are highly similar. *Compare, e.g.*, Compl. ¶¶ 53-54 (alleging that there is a "backdoor in WhatsApp's source code" that permits WhatsApp "to circumvent the encryption in order to view users' private messages," such that WhatsApp has "backdoor access to all WhatsApp user messages.") *with* Dkt. 1, Case No. 3:26-cv-00751, ¶ 36 ("WhatsApp and Meta store and have unlimited access to WhatsApp encrypted communications."). The primary distinction between the two complaints is that Plaintiffs here are U.S. residents subject to WhatsApp's arbitration provision, and the *Dawson* plaintiffs are multinational foreign residents. In fact, the *Dawson* complaint expressly recognizes that the arbitration agreement in the WhatsApp Terms would ***preclude*** litigation in court for the claims that Plaintiffs here bring, excluding from the proposed class "users residing in the United States or Canada (who are subject to an arbitration requirement under WhatsApp Terms of Service)." Dkt. 1, Case No. 3:26-cv-00751, ¶ 4. As a result, each complaint seeks to certify mutually exclusive classes of entirely distinct portions of WhatsApp's userbase. *Compare id.* ¶ 71 (excluding from proposed class WhatsApp users from many different regions, including

---

unauthorized ways (for example, automated ways). ***For clarity and notwithstanding the foregoing, those Disputes relating to, arising out of, or in any way in connection with your rights of privacy and publicity are not Excluded Disputes***." *Id.* at 12 (emphasis added).

those in the United States subject to arbitration provisions) *with* Compl. ¶ 94 (seeking to represent proposed class of all WhatsApp users in the United States).

The entire focus of Plaintiffs' claims and allegations is WhatsApp's compliance with its "express and implied assurances of privacy." *See*, *e.g.*, Compl. ¶¶ 35-36. But Plaintiffs also name as defendants two entities associated with Accenture, a Meta and WhatsApp contractor—despite offering no allegations regarding Accenture that are independent of their core theory as to WhatsApp's purported conduct. Plaintiffs bring only 2 of the 12 causes of action in the complaint against Accenture. *See* Compl. at 28, 38. And Plaintiffs expressly acknowledge that, regardless of naming Accenture as a defendant, the *Dawson* action and this action arise "from the same underlying event, i.e. Meta Platforms, Inc.'s and WhatsApp, LLC's" alleged conduct. Dkt. 22 at 1, Case No. 3:26-cv-00751.

WhatsApp and Meta thus move to compel arbitration of Plaintiffs' claims and stay the proceedings concerning Plaintiffs' complaint.

**LEGAL STANDARD**

The Federal Arbitration Act governs any "contract evidencing a transaction involving [interstate] commerce" and provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. §§ 1, 2. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Accordingly, "courts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms." *Id.* When the parties to a suit have entered into an arbitration agreement, the FAA "leaves no place for the exercise of discretion by a district court" as to whether to "direct the parties to proceed to arbitration on issues as to which [that] arbitration agreement" applies. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Rather, a court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.* "If the answer is yes to both questions, the court must enforce the agreement." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). "Any doubts about

the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016).

## ARGUMENT

## I. THE COURT MUST COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS.

### A. Plaintiffs Entered a Valid and Binding Arbitration Agreement Covering the Claims in the Complaint.

#### 1. Plaintiffs Concede They Agreed to WhatsApp's Terms of Service.

No dispute exists as to whether WhatsApp's Terms of Service constitute a validly formed contract between Plaintiffs and WhatsApp. Plaintiffs affirmatively allege that through their "acceptance of WhatsApp's Terms of Service" they each "entered into a contract with Defendants [WhatsApp and Meta] regarding the use of WhatsApp." Compl. ¶¶ 203-05. This concession definitively establishes Plaintiffs' agreement to the arbitration provision clearly and conspicuously contained in the Terms of Service. *See, e.g.*, *Alfia v. Coinbase Global, Inc.*, 2022 WL 3205036, at *2 (N.D. Cal. July 22, 2022) (arbitration agreement formed based on assent to user agreement); *Hansen v. Ticketmaster Ent., Inc.*, 2020 WL 7319358, at *5 (N.D. Cal. Dec. 11, 2020) (same); *Peterson v. Lyft, Inc.*, 2018 WL 6047085, at *2 (N.D. Cal. Nov. 19, 2018) (same).

To the extent Plaintiffs challenge the enforceability of the arbitration provision itself—notwithstanding their acceptance of WhatsApp's Terms and reliance upon them for claims alleged in the complaint—Plaintiffs cannot carry the high burden of showing the parties' arbitration agreement is unenforceable. "To determine whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 483 (9th Cir. 2020). California law governs any disputes under the Terms, Compl. Ex. 1 at 9, and requires that "[t]he party asserting unconscionability bears the burden of proving it," *Dike v. Zara USA, Inc.*, 672 F. Supp. 3d 822, 829 (N.D. Cal. 2023). Because California law requires both procedural and substantive unconscionability to invalidate an agreement, "the threshold inquiry in California's unconscionability analysis," evaluating procedural unconscionability first, "is whether the arbitration agreement is adhesive." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210-11 (9th Cir. 2016). Such an agreement "is not adhesive if there is an opportunity to opt out of it," and agreements that provide such an opt-out

procedure are thus "procedurally conscionable as a matter of law" and therefore enforceable. *Id.* at 1210-11 (finding arbitration agreement enforceable where party could opt-out within 30 days either in-person or by overnight delivery service). WhatsApp's Terms contain an opportunity to opt-out that permits users to do so within 30 days by regular mail. Compl. Ex. 1 at 13. This is even more permissive than the in-person or overnight delivery requirements over an opt-out period of the same length that the Ninth Circuit found conscionable in *Mohamed*. Courts in this district and elsewhere in the state routinely find similar arbitration agreements non-adhesive and thus enforceable. *See*, *e.g.*, *Kaplan v. The Athletic Media Co.*, 2023 WL 8587981, at *6 (N.D. Cal. Dec. 8, 2023) (arbitration agreement with 30-day opt out period conscionable and enforceable); *Flora v. Prisma Labs, Inc.*, 2023 WL 5061955, at *3-4 (N.D. Cal. Aug. 8, 2023) (same); *Walters v. Luxottica of Am. Inc.*, 2024 WL 661195, at *8 (C.D. Cal. Jan. 5, 2024) (same); *Luis v. SPS Techs., LLC*, 2023 WL 8870517, at *3 (C.D. Cal. Nov. 13, 2023) (same). The parties' arbitration agreements in the WhatsApp Terms of Service are therefore valid and enforceable.

**2. WhatsApp's Terms of Service Provide for Arbitration of Plaintiffs' Claims.**

The broad scope of WhatsApp's Terms of Service, which cover "any claim or cause of action … relating to, arising out of, or in any way in connection with our Terms or our Services," unquestionably covers the claims in Plaintiffs' complaint. Compl. Ex. 1 at 9, 12. "[A]ll disputes" clauses are "broad and far reaching" in scope. *Chiron*, 207 F.3d at 1131-32. Indeed, "[a]n agreement that requires the parties to arbitrate 'any dispute arising out of or relating to' an agreement is intended 'to reach all aspects of their relationship.'" *Neurosigma, Inc. v. De Salles*, 2014 WL 12803168, at *3 (C.D. Cal. Jan. 31, 2014) (quoting *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 732 (9th Cir. 2006)). Under such an agreement, "[t]he standard for demonstrating arbitrability is not high," *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999), while on the other hand "only the most forceful evidence of a purpose to exclude the claim from arbitration" can carry Plaintiffs' burden in opposing arbitration. *Costless Wholesale, Inc. v. Amazon.com Servs. LLC*, 2023 WL 6224825, at *4 (C.D. Cal. Sept. 20, 2023) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). No such evidence exists here. Each cause of action that Plaintiffs assert arises from their use of WhatsApp based on their allegations regarding the encrypted communications that they sent on WhatsApp. *See* Compl. ¶ 7 (explaining that each of Plaintiffs' claims concern the "messages" Plaintiffs sent on WhatsApp); ¶ 119

(claim for Count I based on allegations concerning "communications … sent by a user on the WhatsApp platform"); *see also id.* ¶¶ 135, 146, 155, 169, 179, 189, 217, 235, 244, 252, 267 (similar for all other claims). Based on the nature of their own allegations, Plaintiffs cannot reasonably dispute that, applying controlling law, their claims are within the scope of the arbitration agreement contained in the Terms.

Because the parties' arbitration agreement is valid and encompasses the dispute at issue, "the court must enforce the agreement." *Lifescan*, 363 F.3d at 1012.

**B. Plaintiffs' Must Arbitrate Their Claims Against Meta.**

Plaintiffs cannot circumvent their agreement to arbitrate simply by naming WhatsApp's parent company—Meta Platforms—as a defendant. "Courts applying California law have routinely found that when charges against a parent company and its subsidiary are based on the same facts and inherently inseparable, a court may refer those claims against the parent to arbitration … even if the parent is not formally a party to the arbitration agreement." *Marselian v. Wells Fargo & Co.*, 514 F. Supp. 3d 1166, 1172 (N.D. Cal. 2021) (collecting cases); *see Hart v. Charter Commc'ns, Inc.*, 814 F. App'x 211, 214 (9th Cir. 2020) (holding that parent company could enforce subsidiary's agreement to arbitrate against consumer who sued both companies "bringing identical claims against them") (citing *Boucher v. All. Title Co., Inc.*, 127 Cal. App. 4th 262, 269 (2005)). By seeking to hold a parent liable for the same alleged conduct encompassed in a subsidiary's arbitration agreement, it follows that a plaintiff must necessarily allege "the existence of an agency or similar relationship between the nonsignatory and one of the parties to the arbitration agreement" such that the parent can enforce that agreement against the plaintiff based on their own allegations. *See Marselian*, 514 F. Supp. 3d at 1172 (quoting *NORCAL Mut. Ins. Co. v. Newton*, 84 Cal. App. 4th 64, 76 (2000)). Any contrary outcome would be inconsistent with the FAA: "If the parent corporation was forced to try the case, the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Id.* (quoting *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976)).

Plaintiffs here make no attempt "to distinguish [WhatsApp's] conduct versus [Meta's conduct]," *id.*, repeatedly referring generally to the "Meta and WhatsApp Defendants" and "Meta and WhatsApp" together ***hundreds of times*** throughout the complaint. Each claim they bring against Meta arises out of the WhatsApp Terms of Service and related representations in the WhatsApp Privacy Policy—indeed,

those claims are "identical" to those they bring against WhatsApp. *Hart*, 814 F. App'x at 214. Plaintiffs' latest filing has confirmed as much: in seeking to relate this matter to *Dawson*, they explained that both cases "arise from the same underlying event, i.e. Meta Platforms, Inc.'s and WhatsApp, LLC's" alleged conduct. Dkt. 22 at 1, Case No. 26-cv-00751. Thus, the claims against Meta necessarily rely on Plaintiffs' own theory that the Terms of Service are applicable to Meta and/or that Meta can be bound by them through its alleged exercise of control over WhatsApp as part of a principal-agency relationship. Plaintiffs cannot employ such a theory to seek to hold Meta liable for claims arising out of their use of WhatsApp (including claims explicitly based on alleged contractual obligations in the WhatsApp Terms of Service) while simultaneously disavowing Meta's ability to enforce the arbitration provision for such claims. That argument would flatly contravene California law and the FAA.

### C. Plaintiffs' Request for a "Public Injunction" Does Not Impact Arbitrability of Their Claims.

It is no answer for Plaintiffs to say that they can avoid their contractual obligation to arbitrate because of the complaint's purported request for public injunctive relief pursuant to their claims brought under California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL"). Any attempt to invoke *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 966-67 (2017), which held that waivers of the right to seek public injunctive relief are unenforceable under California law, runs headlong into binding Ninth Circuit precedent finding that precedent inapplicable to arbitration agreements like the one in WhatsApp's Terms of Service.[2]

Nothing in the WhatsApp Terms waives Plaintiffs' ability to seek public injunctive relief in arbitration, and thus the arbitration agreement is fully enforceable as to Plaintiffs' claims here. The Terms of Service contain no provision that limits the form of ***relief*** that a party may seek; rather, the contract

[2] While this Court should reject entirely any attempt to avoid arbitration premised on Plaintiffs' request for public injunctive relief, in all cases the WhatsApp Terms of Service require that the parties proceed to arbitration on Plaintiffs' underlying claims. Compl. Ex. 1 at 13 ("If there is a final judicial determination that any particular Dispute (***or a request for particular relief***) cannot be arbitrated in accordance with this provision's limitations, then only that Dispute (or ***only that request for relief***) may be brought in court. All other Disputes (or requests for relief) remain subject to this provision.") (emphases added). Because this severance clause "explicitly permits the severability of a 'request for particular relief' if that remedial request cannot be submitted to arbitration," only that remedial determination, and not Plaintiffs' underlying claims in their entirety (or any other of Plaintiffs' claims), could be severed from the arbitration proceedings. *Lag Shot LLC v. Facebook, Inc.*, 545 F. Supp. 3d 770, 779-81, 785 (N.D. Cal. June 25, 2021); *see Dornaus v. Best Buy Co.*, 2019 WL 632957, at *6 (N.D. Cal. Feb. 14, 2019); *Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1130 (S.D. Cal. 2024).

merely provides that Disputes can be brought only on a user's "own behalf," and not in a "class action, a class-wide arbitration, Disputes brought in a private attorney general or representative capacity, or consolidated Disputes involving any other person or entity in connection with any Dispute." Compl. Ex. 1 at 13. The Ninth Circuit squarely addressed a similar clause in *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 478 (9th Cir. 2024), that provided: "[a]ll Claims shall be brought solely in the parties' individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." Interpreting the provision, the court held that "the arbitration agreement does not bar the arbitrator from awarding public injunctive relief (nor does it address awardable remedies at all)," and "says nothing about the consumer's ability to pursue, or the arbitrator's ability to award, any certain type of ***relief***." *Id.* (emphasis added). Thus, "because the arbitration provision does not prohibit public injunctive relief in all fora," such an agreement does not implicate the *McGill* rule. *Id.*; *see also DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1158 (9th Cir. 2021) (confirming that "litigants proceeding in individual lawsuits may request public injunctive relief without becoming private attorneys general" such that "public injunctive relief is available" in individual arbitration). This binding precedent controls the outcome of this case, and numerous other district courts addressing similar clauses have reached the same conclusion as the Ninth Circuit did there. *See Ionescu v. Extra Space Storage Inc.*, 2019 WL 3997480, at *4 (N.D. Cal. Aug. 23, 2019); *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 901 (N.D. Cal. 2018); *Gonzalez-Torres v. Zumper, Inc.*, 2019 WL 6465283, at *8 (N.D. Cal. Dec. 2, 2019); *Lee v. Postmates Inc.,* 2018 WL 4961802, at *9 (N.D. Cal. Oct. 15, 2018); *Trout v. Comcast Cable Commc'ns, LLC*, 2018 WL 4638705, at *4 (N.D. Cal. Mar. 15, 2018); *Wheeler v. LG Elecs. USA, Inc.,* 2024 WL 51353, at *11 (E.D. Cal. Jan. 4, 2024); *Hill v. BBVA USA*, 2021 WL 2206477, at *3 (S.D. Cal. June 1, 2021).

Because a request for a public injunction under California law "does not constitute the pursuit of representative claims or relief on behalf of others," *McGill*, 2 Cal. 5th at 959-60, the WhatsApp Terms of Service do not bar Plaintiffs from seeking such a remedy in arbitration. Therefore, Plaintiffs' request for injunctive relief is arbitrable along with all of their asserted claims and remaining requests for relief.

## II. THE COURT SHOULD STAY PROCEEDINGS CONCERNING PLAINTIFFS' COMPLAINT.

### A. Plaintiffs' Claims Against WhatsApp and Meta Must Be Stayed.

When the matters at issue in a lawsuit are subject to arbitration, the FAA mandates that the presiding court "shall … stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Supreme Court has confirmed that this provision "compels the court to stay the proceeding" when a lawsuit involves an arbitrable dispute and a party requests a stay. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Accordingly, Plaintiffs' claims against WhatsApp and Meta must be stayed pending arbitration.

### B. Plaintiffs' Claims Against Accenture Should Be Stayed.

To the extent Plaintiffs can pursue their claims against Accenture in this court, those claims also should be stayed pending the conclusion of the arbitration of Plaintiffs' claims against WhatsApp and Meta. A district court may stay litigation as to non-arbitrating parties "as a matter of its discretion to control its docket." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23 (1983). In determining whether to grant a stay of claims brought against non-signatories, courts in this circuit weigh the parties' competing interests, including "(1) the possible damages from granting a stay; (2) the hardship or inequity to a party if required to litigate; and (3) how a stay would affect the orderly course of justice, including whether a stay will simplify or complicate issues in the pending litigation." *SolarPark Korea Co. v. Solaria Corp.*, 2023 WL 4983159, at *15 (N.D. Cal. Aug. 2, 2023) (citations and quotation omitted). Applying these factors, stays of such claims are generally "appropriate where the arbitrable claims predominate, or where the outcome of the nonarbitrable claims will depend upon the arbitrator's decision." *Id.* (quoting *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 415 (9th Cir. 2002)); *see Ballard v. Corinthian Colleges, Inc.*, 2006 WL 2380668, at *2 (W.D. Wash. Aug. 16, 2006) ("A stay is justified when a nonsignatory lawsuit depends upon the same facts and is inherently inseparable from the arbitrable claims."). "'Avoiding a duplication of effort' is another ground that may justify granting a stay." *Rappaport v. Fed. Sav. Bank*, 341 F. Supp. 3d 1039, 1047 (D. Ariz. 2018) (quoting *United States ex rel. Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985)). That is because it would "waste judicial resources and be burdensome upon the parties if the district court

... were mandated to permit discovery, and upon completion of pretrial proceedings, to take evidence and determine the merits of the case at the same time as the arbitrator is going through a substantially parallel process." *Woods v. Airbnb, Inc.*, 2024 WL 4227746, at *2 (N.D. Cal. Sept. 17, 2024) (quoting *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979)).

Because none of Plaintiffs' allegations or claims against Accenture are based on any Accenture conduct independent of their core theory and claims against WhatsApp, permitting litigation against Accenture here would effect an end-run around the purpose of the arbitration agreement in the WhatsApp Terms of Service—causing substantial hardship to WhatsApp's and Meta's rights to arbitrate the dispute and wholly duplicating the concurrent arbitration proceedings. As other courts in this district have held, "allowing plaintiffs to pursue identical claims against [non-signatories] in court while plaintiffs concurrently arbitrate their claims with [their agreement counterparty] might undermine [the counterparty's] contractual right to resolve its disputes through arbitration." *SST Millennium LLC v. Mission St. Dev. LLC*, 2019 WL 2342277, at *5 (N.D. Cal. June 3, 2019). And here, litigation that revolves entirely around WhatsApp's and Meta's purported conduct—indeed, in Plaintiffs' own words, the action "arise[s] from" it, Dkt. 22 at 1, Case No. 26-cv-00751—leaves no doubt that the "arbitrable claims predominate," particularly considering that only 2 of the 12 claims in the complaint are brought against Accenture. *United*, 46 F. App'x at 415. Such litigation would necessarily implicate WhatsApp's and Meta's rights and interests at every stage of the case to the point where WhatsApp and Meta would functionally become parties themselves. In the event the case were to proceed to discovery, Plaintiffs would surely seek significant document discovery and testimony from WhatsApp, Meta, and their employees under the Federal Rules, as any effort to seek to prove claims that are founded entirely upon WhatsApp's alleged conduct would depend on it—causing a substantial expansion of WhatsApp's and Meta's discovery obligations. That is the exact scenario that the parties agreed to avoid in establishing arbitration procedures to resolve disputes like this one, and the exact reason courts regularly enter stays pending arbitration: "commencing discovery on the non-arbitrable claims risks undermining the arbitration's separate discovery process." *PZZT AZ LLC v. Waste Connections of Arizona Inc.*, 2022 WL 19575807, at *5 (D. Ariz. May 4, 2022) (granting stay); *see SolarPark*, 2023 WL 4983159, at *16 (where non-arbitrable claims are "inseparable" from arbitrable claims, "denying a stay could undermine the

arbitration proceedings"). Plaintiffs would almost certainly seek to implicate ***all*** United States WhatsApp users in defining the discovery requested (including as related to class certification), rather than simply their own accounts, significantly broadening the potential scope of WhatsApp's and Meta's obligations and subverting the parties' agreement to adjudicate claims in arbitration on an individual basis.

By proceeding against Accenture, Plaintiffs would force the Court to determine: whether their complaint states a claim regarding WhatsApp's and Meta's alleged conduct; if so, the scope of appropriate discovery into WhatsApp's and Meta's alleged conduct based on Plaintiffs' claims; the meaning of WhatsApp's Terms of Service and Privacy Policy and whether a genuine dispute of fact exists regarding WhatsApp's compliance with them; and more—all without WhatsApp and Meta being party to the case while a concurrent arbitration on identical issues proceeds simultaneously. This strongly weighs in favor of a stay given the burden and inequity that would be imposed on WhatsApp and Meta as third parties, the burden on the Court and accompanying waste of judicial resources that duplicating the arbitration would cause, and the complexity presented by the two cases proceeding in parallel. What is more, there will be ***zero*** harm or prejudice to Plaintiffs from staying their claims against Accenture, as the merit of those claims depends entirely on their ability to prove the truth of the underlying allegations against WhatsApp—issues that will be adjudicated in arbitration—and only 2 of the 12 claims at issue even purport to involve Accenture at all. All of this weighs heavily in favor of granting a stay.

Plaintiffs will be able to fully and fairly pursue their claims and allegations in arbitration pursuant to the procedures to which they agreed when they accepted the WhatsApp Terms. It would be an affront to the FAA and that arbitration agreement to permit them to nevertheless proceed with litigation by proxy against WhatsApp and Meta in federal court simply by naming additional non-signatory defendants that are not alleged to have engaged in conduct independent of the allegations underlying their arbitrable claims. Such a result would open an avenue for every future potential plaintiff to bring suits against ancillary non-signatories in an effort to avoid an obligation to arbitrate. The Court should see through this transparent gamesmanship and stay any remaining claims against Accenture.

## CONCLUSION

The Court should compel Plaintiffs to proceed to arbitration under the procedures outlined in the WhatsApp Terms of Service and stay all proceedings concerning Plaintiffs' complaint.

DATED: May 11, 2026

Respectfully submitted,
KIRKLAND & ELLIS LLP

*/s/ Laura Vartain Horn*

K. Winn Allen, P.C. (*pro hac vice pending*)
T.J. McCarrick (*pro hac vice pending*)
Saunders McElroy (*pro hac vice pending*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
United States
Telephone: +1 202 389 5000
Facsimile: +1 202 389 5200
winn.allen@kirkland.com
tj.mccarrick@kirkland.com
saunders.mcelroy@kirkland.com

Laura Vartain Horn (SBN 258485)
Bethany Lobo (SBN 248109)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
United States
Telephone: +1 415 439 1400
Facsimile: +1 415 439 1500
laura.vartain@kirkland.com
bethany.lobo@kirkland.com

*Attorneys for Defendants Meta Platforms, Inc., and WhatsApp LLC*

**CERTIFICATE OF SERVICE**

On May 11, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/ Laura Vartain Horn*____________________
Laura Vartain Horn