GIBSON, DUNN & CRUTCHER LLP
DOUGLAS M. FUCHS, SBN 196371
dfuchs@gibsondunn.com
ERIC D. VANDEVELDE, SBN 240699
evandevelde@gibsondunn.com
JEREMY S. SMITH, SBN 283812
jssmith@gibsondunn.com
333 South Grand Avenue, Suite 4600
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for Defendants Accenture PLC and Accenture LLP*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BRYAN Y. SHIRAZI and NIDA SAMSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., WHATSAPP LLC, ACCENTURE PLC, and ACCENTURE LLP,<br><br>Defendants. | CASE NO. 3:26-cv-02615-RFL<br><br>**ACCENTURE PLC'S AND ACCENTURE LLP'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>*[Declaration of Robert Goldman filed concurrently herewith]*<br><br>Complaint Filed: March 25, 2026<br>Judge: Hon. Rita F. Lin<br>Hearing Date Requested: September 29, 2026 (See Request Below)<br>Time: 10:00 a.m.<br>Courtroom: 15, 18th Floor |

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that Defendants Accenture PLC and Accenture LLP (collectively "Accenture") will and hereby do move to dismiss without prejudice the complaint filed by Plaintiffs Bryan Shirazi and Nida Samson ("Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). Accenture requests that a hearing be set for this motion on September 29, 2026, at 10:00 a.m.,[1] or as soon thereafter as the matter may be heard, before the Honorable Rita F. Lin, United States District Judge for the Northern District of California.

Accenture seeks dismissal without prejudice of all the claims against Accenture. This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, all other papers filed in this action, and the arguments of counsel.

DATED: June 9, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Douglas M. Fuchs*

Douglas M. Fuchs
Eric D. Vandevelde
Jeremy S. Smith

*Attorneys for Defendants Accenture PLC and Accenture LLP*

---

[1] As stated in this Court's Civil Standing Order, by default, motions to dismiss are decided on the papers without a hearing. However, parties are permitted to request a hearing. Accenture requests that a hearing be held on this motion to dismiss, because the issues presented are complex and could lead to full dismissal of Accenture from this lawsuit. In addition, the Court set a hearing on the motion to dismiss filed in the related case, *Dawson v. Meta Platforms, Inc.*, Case No. 26-cv-0751-RFL (N.D. Cal.), which presents similar issues.

## TABLE OF CONTENTS

Page

STATEMENT OF ISSUES TO BE DECIDED ........ 1

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. LEGAL STANDARD ........ 3

IV. ARGUMENT ........ 4

A. The Court Lacks Personal Jurisdiction Over Accenture. ........ 4

1. There Is No General Personal Jurisdiction. ........ 5

2. There Is No Specific Personal Jurisdiction. ........ 6

B. Alternatively, Plaintiffs Fail to Plead Any Claim Against Accenture. ........ 7

1. Plaintiffs' Claims Sound in Fraud and Therefore Must Satisfy Rule 9(b). ........ 7

2. Plaintiffs' Conclusory Allegations Are Impermissibly Thin and Are Not Sufficient to Support the Two Claims Against Accenture. ........ 9

a. Plaintiffs Fail Even to Meet the Pleading Standard Imposed by Rule 8(a)(2). ........ 9

b. Count II: California Invasion of Privacy Act ("CIPA") ........ 10

c. Count VII: Intrusion Upon Seclusion ........ 11

V. CONCLUSION ........ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004) ....4

*Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003*, 406 F. Supp. 3d 884 (D. Haw. 2019) ....4, 7, 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....4, 9, 10

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017) ....6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....4, 9

*Bravo v. Cnty. of San Diego*, 2014 WL 555195 (N.D. Cal. Feb. 10, 2014) ....10

*Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969 (9th Cir. 2004) ....4, 7

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ....5

*Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643 (9th Cir. 2019) ....7

*Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011) ....8

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ....6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ....5

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009) ....2, 9, 11, 12

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ....5

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397 (9th Cir. 2021) ....7

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ....8

## TABLE OF AUTHORITIES
## (Cont'd)

Page(s)

*Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.*,
940 F.2d 397 (9th Cir. 1991) .... 8

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) .... 10, 11

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) .... 10

*In re Sagent Tech., Inc.*,
278 F. Supp. 2d 1079 (N.D. Cal. 2003) .... 10

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .... 4, 5, 6, 7

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .... 4, 5, 8, 9

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
715 F.3d 716 (9th Cir. 2013) .... 3

*Walden v. Fiore*,
571 U.S. 277 (2014) .... 7

*Williams v. Yamaha Motor Co. Ltd.*,
851 F.3d 1015 (9th Cir. 2017) .... 5

**Statutes**

Cal. Civ. Proc. Code § 410.10 .... 4

**Rules**

Rule 8(a) .... 9

Rule 12(b)(2) .... 3

Rule 12(b)(6) .... 3, 4

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should dismiss the two claims brought against Accenture for lack of personal jurisdiction.

2. Whether the Court should dismiss the two claims brought against Accenture because Plaintiffs have not satisfied their pleading burden under Rule 9(b).

3. Whether the Court should dismiss the two claims brought against Accenture because Plaintiffs have not sufficiently pled their two claims against Accenture under Rules 8(a) and 12(b)(6).

## I. INTRODUCTION

Plaintiffs' two claims against Accenture PLC and Accenture LLP (collectively "Accenture") should be dismissed because this Court lacks personal jurisdiction over Accenture. Accenture PLC is an Irish company headquartered in Dublin, and Accenture LLP is incorporated in Delaware with its principal place of business in Chicago. Neither is "at home" in California, and Plaintiffs do not plead any suit-related conduct by Accenture that occurred in the state of California. To the contrary, the complaint affirmatively alleges that Accenture content reviewers were located in Texas, Ireland, and Singapore, and that the alleged meetings between Accenture personnel and Meta Platforms, Inc. ("Meta") and WhatsApp LLC ("WhatsApp") took place in Texas. Thus, there is no general or specific personal jurisdiction, and the claims against Accenture must be dismissed on that basis alone.

If this Court disagrees and finds that Accenture is subject to personal jurisdiction, and it denies the motion to compel arbitration concurrently filed (*see* ECF No. 45), Plaintiffs' two claims against Accenture fail as a matter of law. Because Plaintiffs' entire case is based on alleged misrepresentations regarding end-to-end encryption on the WhatsApp platform, Plaintiffs' claims are "grounded in fraud" and must meet the heightened pleading standard set forth in Rule 9(b). But Plaintiffs' Accenture-specific allegations are sparse and vague. Although the complaint is 54 pages long and contains 275 paragraphs, only ***three paragraphs*** include allegations regarding specific conduct by Accenture. *See* ECF No. 1 ("Compl.") ¶¶ 54–56. Everything else is either directed specifically at Meta and WhatsApp or sweeps Accenture into conclusory and undifferentiated allegations regarding "Defendants" "interception" of WhatsApp communications. Thus, the complaint does not meet the standard for particularity under Rule 9(b) or even the general pleading standard set forth in Rule 8(a)(2).

Plaintiffs also fail to sufficiently plead required elements of their claims against Accenture. The

California Invasion of Privacy Act ("CIPA") claim (Count II) fails because Plaintiffs have not pled any facts that Accenture itself tapped or read WhatsApp communications "in transit." At most, the complaint alleges that Accenture content reviewers "had access" or "could" access encrypted messages (Compl. ¶¶ 6, 55), or that Accenture was "provided" with messages that were decrypted by Meta and WhatsApp employees prior to Accenture's review (Compl. ¶¶ 54–55). Plaintiffs' intrusion upon seclusion claim (Count VII) fails because Plaintiffs do not allege that ***Accenture*** intentionally intruded upon—or decrypted—the messages. And regardless, any possible alleged intrusion on behalf of Accenture was not "highly offensive to a reasonable person" or was justified by valid and important policy goals. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286–87 (2009).

For these reasons, the Court should dismiss the claims against Accenture without prejudice.

## II. BACKGROUND

Accenture PLC is a consulting company incorporated in Ireland with its principal place of business in Dublin. *See* Compl. ¶ 21; Declaration of Robert Goldman ("Goldman Decl.") ¶ 2. Accenture LLP is a wholly owned subsidiary of Accenture PLC and is incorporated in Delaware with its principal place of business in Chicago, Illinois.[2] *See* Compl. ¶ 22; Goldman Decl., ¶ 3. Despite Accenture's lack of connection to California or any alleged in-state conduct by Accenture, Plaintiffs sued Accenture in California on March 25, 2026, alongside Meta and WhatsApp on behalf of a putative class action. In their complaint, Plaintiffs generally allege that despite WhatsApp's promises and representations of "end-to-end encryption" of all messages exchanged on the platform, "WhatsApp has, in fact, secretly allowed access to and/or disclosed the contents of users' communications on the WhatsApp platform to itself, Meta, their employees and Accenture contractors, and/or other third parties." Compl. ¶ 36.

Only three paragraphs in the entire complaint include allegations regarding specific Accenture conduct. *See* Compl. ¶¶ 54–56. Plaintiffs allege that "in or around 2021-2022, WhatsApp used hundreds of Accenture content reviewers to review and moderate the content of purportedly encrypted user messages." *Id.* ¶ 54. These reviewers were allegedly located in Texas, Ireland, and Singapore,

[2] Plaintiffs inaccurately allege that Accenture LLP's principal place of business is Delaware. *See* Compl. ¶ 22. Accenture LLP's principal place of business is actually Chicago, Illinois, (*see* Goldman Decl., ¶ 3), but the critical fact is that no one claims it is in California.

and "[u]pon information and belief," "understood that certain WhatsApp/Meta employees had backdoor access to all WhatsApp user messages." *Id.* Plaintiffs claim WhatsApp and Meta employees "pulled" certain messages "to provide to outside investigators in response to requests regarding criminal investigations and/or to Accenture reviewers to review for criminal investigations and/or investigations into violations of company policies." *Id.* ¶ 54.

Plaintiffs also allege that Accenture content moderators were assigned to "investigate fraud on Facebook Marketplace." Compl. ¶ 55. "Upon information and belief," Plaintiffs claim that "these contractors were employed by Accenture LLP and were provided purportedly encrypted WhatsApp messages through Workplace, Meta's internal portal." *Id.* Plaintiffs contend that "[u]pon further information and belief, once a user message was flagged for potential fraud, days of messages would be sent through the portal to be reviewed" and that "[u]sernames and profile information [were] visible to reviewers, along with the content of the messages, which could be viewed by scrolling through the dashboard on the portal." *Id.* Finally, Plaintiffs allege that "Accenture managers held monthly meetings with Meta/WhatsApp managers at Meta's Austin office where they shared data regarding the result of their investigations." *Id.* ¶ 56. The remainder of the allegations "against Accenture" are general and conclusory in nature and grouped with the other Defendants. *See, e.g., id.* ¶ 137 ("Defendant Accenture conspired with the Meta and WhatsApp Defendants to engage in this non-consensual tapping and interception of the communications of Plaintiffs and Class Members.").

Plaintiffs assert only two out of the twelve causes of action against Accenture: Count II, Violation of California Invasion of Privacy Act, and Count VII, Common Law Invasion of Privacy—Intrusion Upon Seclusion. *Id.* ¶¶ 126–141, 186–199. Plaintiffs assert an additional ten causes of action against Meta and WhatsApp. There are no causes of action unique to Accenture.

Accenture now moves to dismiss the claims against it. [3]

## III. LEGAL STANDARD

A court must dismiss claims against a defendant if it lacks personal jurisdiction over that defendant. *See* Fed. R. Civ. P. 12(b)(2). "When a defendant moves to dismiss for lack of personal

[3] Accenture does not intend to waive its arbitration rights by raising the Rule 12(b)(6) arguments in this motion. Instead, Accenture raises these arguments only in the event the Court denies the motion to dismiss under Rule 12(b)(2) and also denies the concurrently filed motion to compel arbitration.

jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).

Under Rule 12(b)(6), dismissal is warranted when a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs may not merely plead "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.*, 550 U.S. at 555. A complaint also cannot be based on "naked assertion[s]" without "further factual enhancement." *Id.* at 557. And courts need not accept "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged," or are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004). Group pleadings that simply lump defendants together are similarly insufficient. *Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003*, 406 F. Supp. 3d 884, 903 (D. Haw. 2019); *see also Swartz*, 476 F.3d at 764–765.

## IV. ARGUMENT

Both claims against Accenture must be dismissed because this Court lacks general personal jurisdiction and specific personal jurisdiction over Accenture. However, should this Court disagree, Plaintiffs' claims against Accenture fail for additional reasons. Plaintiffs have not met the pleading standards set forth in Rule 9(b) or Rule 8(a)(2), and they fail to plead essential elements of the CIPA and intrusion upon seclusion claims.

### A. The Court Lacks Personal Jurisdiction Over Accenture.

"Where [] there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Schwarzenegger*, 374 F.3d at 800. Such is the case here. California's "long-arm jurisdictional statute is coextensive with federal due process requirements," and therefore "the jurisdictional analyses under state law and federal due process are the same." *Id.* at 800–801; *see also* Cal. Civ. Proc. Code § 410.10. "For a court to exercise personal

jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). At the motion to dismiss stage, "bare bones assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (cleaned up). Here, Plaintiffs cannot establish general jurisdiction or specific jurisdiction over Accenture in this matter.

**1. There Is No General Personal Jurisdiction.**

A corporation like Accenture is subject to general jurisdiction only where it is "'essentially at home.'" *Daimler AG v. Bauman*, 571 U.S. 117, 138–139 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Ninth Circuit has held that this is "an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801. "[I]n the paradigmatic circumstance for exercising general jurisdiction, the corporate defendant is incorporated or has its principal place of business in the forum state." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (citing *Goodyear*, 564 U.S. at 924).

Here, Plaintiffs attempt to invoke general personal jurisdiction over Accenture by grouping Accenture with Meta. Specifically, Plaintiffs plead "Defendant***s*** have sufficient minimum contacts with this District in that they operate and market their services throughout the region and in this District. Further this Court has personal jurisdiction over Defendant***s*** because Defendant***s*** are headquartered in this District." Compl. ¶ 10 (emphasis added). But as Plaintiffs admit elsewhere in the Complaint, these allegations are demonstrably wrong as to Accenture. Plaintiffs concede that Accenture PLC is incorporated in Ireland and has its principal place of business in Dublin—not California. *See* Compl. ¶ 21; Goldman Decl., ¶ 2. Accenture LLP is incorporated under the laws of Delaware and has its principal place of business in Chicago—again, not California. *See* Compl. ¶ 22; Goldman Decl., ¶ 3. Thus, neither Accenture's place of incorporation nor principal place of business is California, and

Plaintiffs have alleged no other facts regarding Accenture's business operations in California. They have not met their burden.

This Court does not have general personal jurisdiction over Accenture, and the claims against it should be dismissed without prejudice for this reason alone.

**2. There Is No Specific Personal Jurisdiction.**

Plaintiffs do not appear to invoke specific personal jurisdiction against Accenture, and for good reason: it does not exist here. To establish specific personal jurisdiction as to the claims alleged in this matter, there must be "sufficient 'minimum contacts' with California arising from, or related to," the conduct alleged in this lawsuit (*Schwarzenegger*, 374 F.3d at 801–802)—specifically, Accenture's alleged review of Plaintiffs' purportedly encrypted WhatsApp communications. The Ninth Circuit has established a three-prong test to analyze specific jurisdiction: "(1) [t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction . . . must be reasonable." *Id.* at 802. The plaintiff has the burden of establishing the first two prongs, and only if those prongs are established does the defendant have the burden to show that the exercise of jurisdiction would be unreasonable. *Id.* Here, Plaintiffs cannot establish the first prong.

***Purposeful Direction***. Courts in the Ninth Circuit must apply the three-part "*Calder* effects" test to evaluate whether there is purposeful direction such that the exercise of specific jurisdiction is warranted: a defendant must have "'(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Schwarzenegger*, 374 F.3d at 803 (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)); *see also Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).

Here, Plaintiffs expressly allege that Accenture content reviewers performed their work in Texas, Ireland, and Singapore. Compl. ¶ 54. They allege that the monthly meetings with Meta, WhatsApp, and Accenture occurred in the Texas office. Compl. ¶ 56. There are no allegations of any specific conduct by Accenture occurring in California, much less an intentional act by Accenture

expressly aimed at California and that Accenture knew would cause harm to Plaintiffs in California. *See Schwarzenegger*, 374 F.3d at 803.

Plaintiffs do allege, via impermissible group pleading, that "Defendants willfully read or attempted to read" communications that were "in transit or passing over any wire, line, or cable, or were being received at any place within California." Compl. ¶ 138. But this violates Rule 8(a)'s prohibition on group pleading (*see Aquilina*, 406 F. Supp. 3d at 903), and is the type of conclusory allegation entitled to no weight on a Rule 12(b) motion (*see Cholla Ready Mix, Inc.*, 382 F.3d at 973). Further, specific personal jurisdiction "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there," *i.e.*, "suit-related conduct must create a substantial connection with the forum State" itself, not merely with a person who happens to live there or receive communications that pass over wires within California. *Walden v. Fiore*, 571 U.S. 277, 284–286 (2014).

Thus, there is no specific personal jurisdiction over Accenture either.

## B. Alternatively, Plaintiffs Fail to Plead Any Claim Against Accenture.

The Court need not analyze the merits of Plaintiffs' claims should it determine this Court lacks personal jurisdiction over Accenture (*see supra* at Section IV.A), or should it determine that the claims against Accenture are subject to arbitration (*see* ECF No. 45). However, Plaintiffs' claims against Accenture also suffer from fatal pleading deficiencies and should be dismissed for that reason as well. Plaintiffs' claims sound in fraud and must meet the heightened pleading standard set forth in Rule 9(b). They do not. Plaintiffs also do not meet the lower pleading standard set forth in Rule 8(a)(2), and fail to plead essential elements of their claims.

### 1. Plaintiffs' Claims Sound in Fraud and Therefore Must Satisfy Rule 9(b).

Rule 9(b)'s particularity requirement applies to both federal and state law causes of action relating to fraud when asserted in federal court. *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 404 (9th Cir. 2021). To meet Rule 9(b)'s heightened pleading standard, a plaintiff "must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statements, and why it is false." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (cleaned up). Rule 9(b) also bars group

pleading—a plaintiff "must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Swartz*, 476 F.3d at 764–65. "A complaint governed by Rule 9(b) must 'detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme.'" *Aquilina*, 406 F. Supp. 3d at 903 (quoting *Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991)).

Rule 9(b) governs any case in which "the claim is said to be grounded in fraud or to sound in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (cleaned up). For instance, in *Kearns v. Ford Motor Co.*, the plaintiffs brought claims under California's Consumers Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL"). 567 F.3d at 1122. The Ninth Circuit held that "[w]hile fraud is not a necessary element of a claim under the CLRA and UCL, a plaintiff may . . . allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim. In that event, the claim is said to be grounded in fraud or to sound in fraud and the pleading ***as a whole*** must satisfy the particularity requirement of Rule 9(b)." *Id.* at 1125 (cleaned up) (emphasis added).

Such is the case here. The gravamen of Plaintiffs' complaint is that WhatsApp and its parent company, Meta, made—or knowingly permitted—false and misleading statements about WhatsApp's encryption and privacy policies and concealed the fact that contractors, like Accenture, could view supposedly encrypted messages. *See, e.g.*, Compl. ¶¶ 4–5. Plaintiffs allege that they had a "reasonable expectation of privacy" in their WhatsApp communications because "Defendants assured users [such communications] were private and could not be seen by anyone other than intended recipients." Compl. ¶ 191. However, Plaintiffs allege Defendants "secret[ly]" intercepted, read, stored, accessed, and/or viewed these messages. *See, e.g.*, Compl. ¶¶ 139, 193. Plaintiffs allege this is a direct violation of "express and implied assurances of privacy." Compl. ¶ 36. They even allege at various points that Meta's and WhatsApp's practices were "fraudulent." *See, e.g.*, Compl. ¶¶ 155, 159, 251, 253, 256, 258, 262, 268. Thus, Plaintiffs' claims are clearly grounded in fraud.

Despite this, Plaintiffs have not satisfied the strict pleading standard in Rule 9(b). They have identified no actual statement or promise made by Accenture, no act of concealment by Accenture, no time or place of any specific acts performed by Accenture, and no specific messages or communications

of Plaintiffs that an Accenture employee accessed. *See, e.g.*, *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (affirming district court order finding that pleading failed to "state clearly how each and every defendant is alleged to have violated plaintiffs' legal rights"). Plaintiffs employ the exact "everyone did everything" type of allegations that were found to be insufficient under Rule 9(b) in *Destfino v. Reiswig*. *See id.* ("The second amended complaint was properly dismissed because it . . . continu[ed] to make 'everyone did everything' allegations.").

Plaintiffs also have failed to sufficiently identify "at a minimum," Accenture's specific role in the alleged scheme. *Swartz*, 476 F.3d at 764–65. At most, only three paragraphs relate to Accenture-specific conduct. *See* Compl. ¶¶ 54–56. But these paragraphs allege nothing more than Accenture content reviewers may have reviewed messages provided to them by Meta and WhatsApp employees and that—"[u]pon information and belief"—these content reviewers "understood that certain WhatsApp/Meta employees had backdoor access to all WhatsApp user messages from which they pulled the messages to provide to . . . Accenture reviewers to review." Compl. ¶ 54; *see also* Compl. ¶ 55. These allegations do not identify Accenture's specific role in the scheme.

Thus, Plaintiffs have not met the heightened pleading standard, and the claims should be dismissed.

**2. Plaintiffs' Conclusory Allegations Are Impermissibly Thin and Are Not Sufficient to Support the Two Claims Against Accenture.**

Plaintiffs have also failed to meet Rule 8(a)(2)'s "short and plain statement" requirement. *See* Fed. R. Civ. P. 8(a)(2). They also have not pled sufficient facts demonstrating that Accenture tapped or intercepted any of Plaintiffs' communications "in transit," as required under CIPA. And they have not sufficiently pled either of the two elements of the common law tort of intrusion upon seclusion: (a) that Accenture itself intentionally intruded upon Plaintiffs' communications, or (b) that any alleged intrusion was "highly offensive to a reasonable person." *Hernandez*, 47 Cal. 4th at 286.

**a. Plaintiffs Fail Even to Meet the Pleading Standard Imposed by Rule 8(a)(2).**

Under Rule 8(a)(2), "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677–678 (quoting *Twombly*, 550 U.S. at 555). Although the pleading standard "does not require 'detailed factual allegations,'" "it demands more than

an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). But that is exactly what Plaintiffs have done here with their strained allegations against Accenture.

For one, Plaintiffs' claims against Accenture primarily rely on general, conclusory allegations—devoid of any factual elaboration—that "Defendant Accenture conspired with the Meta and WhatsApp Defendants to engage in this non-consensual tapping and interception of the communications of Plaintiffs and Class Members." Compl. ¶ 137. Plaintiffs' conclusory assertions that Accenture "conspired" with Meta/WhatsApp (*see* Compl. ¶¶ 5, 137), are precisely the kind of "unadorned" accusation that *Iqbal* expressly forbids (*see* 556 U.S. at 678). Indeed, courts in the Ninth Circuit have found that "broad conclusions" "not supported by factual allegations" are insufficient to meet the standard set forth in Rule 8(a)(2) and do not provide defendants with fair notice of the claims against them. *Bravo v. Cnty. of San Diego*, 2014 WL 555195, at *2 (N.D. Cal. Feb. 10, 2014).

And further, Plaintiffs impermissibly (and inaccurately) group Meta/WhatsApp and Accenture together and "fail[] to allege which defendants engaged in what activity and when." *See Bravo*, 2014 WL 555195, at *2 (citing cases prohibiting group pleading under Rule 8(a)); *see also In re Sagent Tech., Inc.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) ("[T]he complaint fails to state a claim because plaintiffs do not indicate which individual defendant or defendants were responsible for which alleged wrongful act."). This is yet another reason Plaintiffs have not met their burden under Rule 8(a)(2).

**b. Count II: California Invasion of Privacy Act ("CIPA")**

Plaintiffs have also failed to plead a CIPA claim against Accenture. To plead a CIPA violation, Plaintiffs must plead that Accenture intentionally tapped or read communications "in transit." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951–954 (N.D. Cal. 2014) (finding analysis under CIPA is the same as the Wiretap Act, and "for a communication to be intercepted in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage"). Plaintiffs must do so with "more than conclusory allegations that messages were 'intercepted in real time.'" *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1110–11 (C.D. Cal. 2023).

Here, the complaint has **no** specific factual allegations that Accenture employees intercepted

any communications of Plaintiffs, in transit or otherwise. The complaint pleads only that Accenture contractors "had access" or "could" access encrypted messages (Compl. ¶¶ 6, 55), after they were "*provided* [the] purportedly encrypted WhatsApp messages," (Compl. ¶ 55 (italics added)). *See also id.* ¶ 54 (alleging WhatsApp/Meta employees pulled messages that were provided to Accenture for content review).

And again, Plaintiffs cannot avoid dismissal of this claim by relying on wholly conclusory allegations that group all the defendants together—for instance, their allegation that "Defendants" (collectively) intercepted the messages "in transit" or "could access the contents in real time." *See* Compl. ¶¶ 138–139. These allegations are analogous to the allegations in *Licea v. Cinmar, LLC*, in which the court found the CIPA claim was not sufficiently pled for this exact reason. *See* 659 F. Supp. 3d at 1109–1110. Specifically, the court in *Licea* found that the plaintiffs' "allegations that 'the third party secretly intercepts in real time, eavesdrops upon, and stores transcripts' [are] conclusory and do[] not allege specific facts as to how or when the interception takes place, which has been found to fall short of stating a plausible claim under section 631(a)." *Id.* (collecting cases finding same). So too here.

**c. Count VII: Intrusion Upon Seclusion**

Finally, Plaintiffs have also failed to plead an intrusion upon seclusion claim. To plead the common law tort of intrusion upon seclusion, Plaintiffs must plead sufficient facts showing: (1) the defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy; and (2) the intrusion occurred in a manner highly offensive to a reasonable person. *Hernandez*, 47 Cal. 4th at 285–86. Plaintiffs have failed to plead both prongs.

*First*, Plaintiffs have failed to plead an intentional intrusion upon seclusion by *Accenture* itself. The allegation that Accenture had "access" to the messages (*see* Compl. ¶¶ 6, 55) does not establish an intentional intrusion. And again, Plaintiffs do not allege that *Accenture* employees accessed the data or decrypted messages. They merely allege that Accenture was "provided" messages and that Accenture content reviewers may have reviewed and moderated the content of previously encrypted messages that were initially decrypted by WhatsApp/Meta employees and provided to Accenture. Compl. ¶¶ 54–55. Even further, Plaintiffs do not allege that Accenture designed the encryption system,

decrypted any messages, controlled message flow, or made any specific privacy representations to Plaintiffs. Accenture is not alleged to have written, ratified, or reviewed any user-facing disclosure about privacy or encryption.

*Second*, under California law, the intrusion must be "highly offensive." *Hernandez*, 47 Cal. 4th at 286. Merely having "access" (*see* Compl. ¶¶ 6, 55) to messages is not "highly offensive" without further intrusion upon the privacy of the users. Further, Plaintiffs allege that Accenture employees supposedly reviewed certain messages in response to criminal investigations, violations of company policy, and to investigate fraud on Facebook Marketplace. Compl. ¶¶ 54–55. The purpose and scope of any content review by Accenture employees is relevant because California recognizes that "the degree and setting of the intrusion" as well as "the intruder's motives and objectives" are pertinent to whether the intrusion was "highly offensive." *Hernandez*, 47 Cal. 4th at 287. Here, there is no allegation that Accenture employees had broad access to every message exchanged on WhatsApp or that they reviewed messages unconnected to suspected criminal activity or policy violations. As Plaintiffs admit, the scope of any review by Accenture employees was narrow, targeted, and consistent with important and clear policy objectives—eliminating crime and other undesirable behavior from the platform. *See* Compl. ¶¶ 54–55.

## V. CONCLUSION

For these reasons, the claims against Accenture should be dismissed without prejudice.

DATED: June 9, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Douglas M. Fuchs*
Douglas M. Fuchs
Eric D. Vandevelde
Jeremy S. Smith

*Attorneys for Defendants Accenture PLC and Accenture LLP*

**CERTIFICATE OF SERVICE**

On June 9, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*<u>/s/ Douglas M. Fuchs</u>*
Douglas Fuchs