GIBSON, DUNN & CRUTCHER LLP
DOUGLAS M. FUCHS, SBN 196371
dfuchs@gibsondunn.com
ERIC D. VANDEVELDE, SBN 240699
evandevelde@gibsondunn.com
JEREMY S. SMITH, SBN 283812
jssmith@gibsondunn.com
333 South Grand Avenue, Suite 4600
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for Defendants Accenture PLC and Accenture LLP*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

BRYAN Y. SHIRAZI and NIDA SAMSON, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

META PLATFORMS, INC., WHATSAPP LLC, ACCENTURE PLC, and ACCENTURE LLP,

Defendants.

CASE NO. 3:26-cv-02615-RFL

**ACCENTURE PLC'S AND ACCENTURE LLP'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS UNDER 9 U.S.C. §§ 3–4**

Complaint Filed: March 25, 2026
Judge: Hon. Rita F. Lin
Hearing Date: September 29, 2026
Time: 10:00 a.m.
Courtroom: 15, 18th Floor

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY**

PLEASE TAKE NOTICE that on September 29, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Rita F. Lin, United States District Judge for the Northern District of California, Defendants Accenture PLC and Accenture LLP (collectively "Accenture") will and hereby do move the Court for an order compelling Plaintiffs to arbitration and staying proceedings pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3–4.

Accenture seeks to compel the two claims against it to arbitration and seeks a stay of these proceedings. This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, all other papers filed in this action, and the arguments of counsel.

DATED: June 9, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: *<u>/s/ Douglas M. Fuchs</u>*

Douglas M. Fuchs
Eric D. Vandevelde
Jeremy S. Smith

*Attorneys for Defendants Accenture PLC and Accenture LLP*

## TABLE OF CONTENTS

Page


STATEMENT OF ISSUES TO BE DECIDED ..... 1

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

- A. WhatsApp's Terms of Service and the Arbitration Agreement ..... 2
- B. Plaintiffs' Allegations ..... 3

III. LEGAL STANDARD ..... 4

IV. ARGUMENT ..... 5

- A. A Valid Arbitration Agreement Exists. ..... 5
- B. The Arbitration Agreement Encompasses Plaintiffs' Claims. ..... 6
- C. Plaintiffs Are Estopped from Avoiding Arbitration. ..... 8
- D. This Case Must Be Stayed Pending Any Arbitration Ordered by the Court. ..... 10

V. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alfia v. Coinbase Global, Inc.*,
2022 WL 3205036 (N.D. Cal. July 22, 2022) .....5

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009) .....5

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .....4

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) .....8

*Boucher v. All. Title Co.*,
127 Cal. App. 4th 262 (2005) .....8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .....4, 6

*Costless Wholesale, Inc. v. Amazon.com Services LLC*,
2023 WL 6224825 (C.D. Cal. Sept. 20, 2023) .....8

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .....4

*Franklin v. Cmty. Reg'l Med. Ctr.*,
998 F.3d 867 (9th Cir. 2021) .....8

*Goldman v. KPMG, LLP*,
173 Cal. App. 4th 209 (2009) .....8

*Hansen v. Ticketmaster Ent., Inc.*,
2020 WL 7319358 (N.D. Cal. Dec. 11, 2020) .....5

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .....9

*JSM Tuscany, LLC v. Super. Ct.*,
193 Cal.App.4th 1222 (2011) .....1, 5, 8, 11

*Kaplan v. The Athletic Media Co.*,
705 F. Supp. 3d 992 (N.D. Cal. 2023) .....6

*Metalclad Corp. v. Ventana Env'tl Organizational P'ship*,
109 Cal. App. 4th 1705 (2003) .....8

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) .....6

## TABLE OF AUTHORITIES
## (Cont'd)

Page(s)

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ........................................ 4, 7, 10

*Neurosigma, Inc. v. DeSalles*,
2014 WL 12803168 (C.D. Cal. Jan. 31, 2014) ........................................ 7

*Peterson v. Lyft, Inc.*,
2018 WL 6047085 (N.D. Cal. Nov. 19, 2018) ........................................ 6

*Schoenduve Corp. v. Lucent Techs., Inc.*,
442 F.3d 727 (9th Cir. 2006) ........................................ 7

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ........................................ 7

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ........................................ 10

*SolarPark Korea Co. v. Solaria Corp.*,
2023 WL 4983159 (N.D. Cal. Aug. 2, 2023) ........................................ 10, 11

*SST Millennium LLC v. Mission St. Dev. LLC*,
2019 WL 2342277 (N.D. Cal. June 3, 2019) ........................................ 11, 12

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) ........................................ 9

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960) ........................................ 7

*Woods v. Airbnb, Inc.*,
2024 WL 4227746 (N.D. Cal. Sept. 17, 2024) ........................................ 11, 12

**Statutes**

9 U.S.C. § 2 ........................................ 4

9 U.S.C. § 3 ........................................ 5, 8, 10

9 U.S.C. § 4 ........................................ 5, 8

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiffs' two claims against Accenture must be compelled to arbitration pursuant to the Federal Arbitration Act and the arbitration agreement in the WhatsApp Terms of Service.

2. Whether proceedings in this Court should be stayed pending the outcome of the arbitration of Plaintiffs' claims against Accenture.

3. If the Court finds that the claims against Accenture should not be compelled to arbitration, whether proceedings in this Court against Accenture should be stayed pending the outcome of any arbitration of Plaintiffs' claims against Meta Platforms, Inc. and/or WhatsApp LLC.

## I. INTRODUCTION

As explained in Accenture's concurrently filed motion to dismiss (*see* ECF No. 44), this Court lacks personal jurisdiction over Accenture. Neither Accenture entity named in this lawsuit is incorporated in or has its principal place of business in California, and Plaintiffs have not pled any suit-related conduct on behalf of Accenture that occurred in California. Plaintiffs' two claims against Accenture should be dismissed for lack of personal jurisdiction alone. Thus, the Court need not reach the merits of this motion to compel arbitration at all, but rather it should dismiss Accenture from this lawsuit.

However, if the Court finds that it does have personal jurisdiction over Accenture, Plaintiffs' claims against Accenture should be compelled to arbitration, or at a minimum, stayed pending any arbitration between Plaintiffs, Meta Platforms, Inc. ("Meta"), and WhatsApp LLC ("WhatsApp"). Plaintiffs have expressly alleged that they entered into WhatsApp's Terms of Service, in which they agreed to arbitrate any dispute "relating to, arising out of, or in any way in connection with [WhatsApp's] Terms or [WhatsApp's] Services." *See* ECF No. 1 ("Compl.") ¶¶ 203–206; *id.*, Ex. 1 at 11. The claims in this case—all of which relate to WhatsApp's end-to-end message encryption and Plaintiffs' expectation of privacy resulting from the end-to-end encryption—clearly "relate to," "arise out of," and "connect" to WhatsApp's Terms of Service. And under clearly established California law, Plaintiffs cannot avoid that broad arbitration provision by suing a non-signatory to the agreement, here Accenture, when their claims are "dependent upon, or founded in and inextricably intertwined with the underlying contractual obligations of the agreement containing the arbitration clause." *JSM Tuscany, LLC v. Super. Ct.*, 193 Cal.App.4th 1222, 1238 (2011) (citation omitted). Such is the case here.

Should the Court order the claims against Accenture to arbitration, it should also stay the case in this Court pending the outcome of the arbitral proceedings. In the alternative, if the Court does not order arbitration as to Accenture but orders the claims against WhatsApp and/or Meta to arbitration, the Court should still stay this case as to Accenture. The arbitrable claims are entirely duplicative of the claims against Accenture and are not based on any independent conduct or allegations. Proceeding with the claims against Accenture while the Meta/WhatsApp claims are arbitrated poses a serious risk of inconsistent rulings and would be an unnecessary waste of judicial resources because the arbitration will greatly simplify, or even eliminate, the issues before this Court.

## II. BACKGROUND

### A. WhatsApp's Terms of Service and the Arbitration Agreement

Plaintiffs allege they are United States residents and WhatsApp account holders and regular users. Compl. ¶¶ 13–18. Plaintiffs admit that WhatsApp requires all users to agree to its Terms of Service and the incorporated Privacy Policy upon creating an account. *Id.* ¶¶ 27, 203. They also clearly allege and concede that they agreed to the Terms of Service and Privacy Policy and "thus entered into a contract with Defendants regarding the use of WhatsApp." *Id.* ¶¶ 204–205. Plaintiffs attach the January 4, 2021, WhatsApp Terms of Service and Privacy Policy as Exhibits 1 and 2 to the complaint.

The Terms of Service includes a provision entitled "Special Arbitration Provision For United States Or Canada Users." Compl., Ex. 1 at 11–13. The first paragraph of this section—in all capital letters—clearly states: "PLEASE READ THIS SECTION CAREFULLY . . . . IF YOU ARE A WHATSAPP USER LOCATED IN THE UNITED STATES OR CANADA, YOU AND WE AGREE TO SUBMIT ALL DISPUTES TO BINDING INDIVIDUAL ARBITRATION . . . ." *Id.* at 11. The arbitration provision further states that all users in the United States and Canada agree "to waive the right to a trial by judge or jury for all Disputes, except for the Excluded Disputes," and that "all Disputes (except for the Excluded Disputes), including those relating to, arising out of, or in any way in connection with your rights of privacy and publicity, will be resolved through final and binding arbitration." *Id.* "Disputes" is defined as any claim or cause of action "relating to, arising out of, or in any way in connection with our Terms of Services." *Id.* at 8. "Excluded Disputes" is any dispute relating to the enforcement or infringement of intellectual property rights or efforts to "interfere with

our Services or engage with our Services in unauthorized ways (for example, automated ways)." *Id.* at 11. And the arbitration provision is crystal clear that "those Disputes relating to, arising out of, or in any way in connection with your rights of privacy and publicity are not Excluded Disputes." *Id.* The Terms of Service allow users to opt out of this binding arbitration agreement within 30 days by mailing a notice in writing (*id.* at 12), but Plaintiffs do not allege they did so.

**B. Plaintiffs' Allegations**

The thrust of Plaintiffs' complaint is that Plaintiffs allege there is a "backdoor in WhatsApp's source code that allows Meta/WhatsApp, certain Meta/WhatsApp employees, and approved third-party contractors to circumvent the encryption in order to view users' private messages." Compl. ¶ 53. Plaintiffs allege this is a problem, in part, because the Privacy Policy asserts that WhatsApp offers "'end-to-end encryption for our Services. End-to-end encryption means that your messages are encrypted to protect against us and third parties from reading them.'" *Id.* ¶ 34 (quoting Ex. 2 at 3). Plaintiffs allege that "[d]espite its express and implied assurances of privacy," including in the Terms of Service and Privacy Policy, "WhatsApp has, in fact, secretly allowed access to and/or disclosed the contents of users' communications on the WhatsApp platform to itself, Meta, their employees and Accenture contractors, and/or other third parties." *Id.* ¶ 36. They say that "nowhere" in the Terms of Service or Privacy Policy does WhatsApp disclose to users that their employees "and/or Accenture contractors may access the messages sent by users on the WhatsApp platform." *Id.* ¶ 35; *see also id.* ¶ 66.

Only **three** out of the 275 paragraphs in Plaintiffs' complaint discuss Accenture-specific alleged conduct. *See* Compl. ¶¶ 54–56. Plaintiffs simply allege that "in or around 2021-2022, WhatsApp used hundreds of Accenture content reviewers to review and moderate the content of purportedly encrypted user messages" "to provide to outside investigators in response to requests regarding criminal investigations and/or" for "investigations into violations of company policies." *Id.* ¶ 54. Plaintiffs also allege that Accenture content moderators were assigned to "investigate fraud on Facebook Marketplace" (*id.* ¶ 55), and "Accenture managers held monthly meetings with Meta/WhatsApp managers at Meta's Austin office where they shared data regarding the result of their investigations" (*id.* ¶ 56). And Plaintiffs assert only two out of the twelve causes of action against Accenture—Count

II, Violation of California Invasion of Privacy Act, and Count VII, Common Law Invasion of Privacy—Intrusion Upon Seclusion. *Id.* ¶¶ 126–141, 186–199. Both of these counts are brought against all Defendants; there are no causes of action unique to Accenture. It is clear Accenture is not the primary focus or target of this lawsuit.

On June 9, 2026, Accenture also filed a motion to dismiss with this motion to compel arbitration. The motion to dismiss argues that this Court lacks general personal jurisdiction over Accenture because Accenture PLC is a consulting company incorporated in Ireland with its principal place of business in Dublin, Ireland (Compl. ¶ 21), and Accenture LLP is incorporated in Delaware and has its principal place of business in Chicago (*id.* ¶ 22; ECF No. 44-1 ¶ 3). The motion further argues there is no specific personal jurisdiction because Plaintiffs do not plead any suit-related conduct by Accenture occurred in California. *See* ECF No. 44 at 6–7. This motion to compel arbitration is brought in the alternative to the motion to dismiss for lack of personal jurisdiction, and the Court need not decide this motion if it finds that there is no personal jurisdiction over Accenture.[1]

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs any "contract evidencing a transaction involving [interstate] commerce." 9 U.S.C. § 2. Under the FAA, an arbitration provision "shall be valid, irrevocable, and enforceable." *Id.* The FAA establishes a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011). Any doubts concerning arbitrability are resolved in favor of arbitration (*see Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018)), and a court is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue" (*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* Further, non-signatories

[1] Accenture has not waived, and does not intend to waive, its arbitration rights by bringing the Rule 12(b)(6) motion. Instead, Accenture raises the Rule 12(b)(6) arguments solely in the event the Court denies the personal jurisdiction motion and also denies this motion to compel arbitration. The Court need only reach those arguments should it deny the motion to dismiss for lack of personal jurisdiction and this motion to compel arbitration.

to a contract are permitted to compel arbitration when a signatory plaintiff's claims against the non-signatory are "dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of the agreement containing the arbitration clause." *JSM Tuscany, LLC*, 193 Cal. App. 4th at 1238 (citations omitted).

Whether a non-signatory to a contract and arbitration agreement (like Accenture) can compel arbitration is governed by state contract law. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–32 (2009). Here, the Terms of Service's choice-of-law clause states that California law governs. Compl., Ex. 1 at 8. Plaintiff Bryan Y. Shirazi is also a citizen of California. *See* Compl. ¶ 13.

## IV. ARGUMENT

### A. A Valid Arbitration Agreement Exists.

There can be no dispute that the WhatsApp Terms of Service and the incorporated Privacy Policy constitute a valid contract between Plaintiffs and WhatsApp.[2] Plaintiffs expressly allege that they accepted the WhatsApp Terms of Service and each "entered into a contract with Defendants regarding the use of WhatsApp." Compl. ¶¶ 203–205. Both the Terms of Service and Privacy Policy are attached to the complaint as Exhibits 1 and 2, and the Terms of Service contains a clear and binding arbitration provision governed by California law. *Id.*, Ex. 1 at 3 ("If you are a WhatsApp user located in the United States or Canada, our terms contain a binding arbitration provision . . . ."), 8 ("The laws of the State of California govern our Terms, as well as any Disputes, whether in court or arbitration . . . ."), 11–13 ("Special Arbitration Provision For United States Or Canada Users"). No more is required for this Court to find that a valid arbitration agreement exists.

In addition, courts consistently find that account users manifest an intent to be bound by a user agreement—and therefore a valid contract and arbitration agreement is formed—when they "click[] a box stating that [they] agreed to the User Agreement." *See, e.g.*, *Alfia v. Coinbase Global, Inc.*, 2022 WL 3205036, at *2 (N.D. Cal. July 22, 2022) (finding there was a binding arbitration agreement following plaintiff's assent to the Coinbase User Agreement); *Hansen v. Ticketmaster Ent., Inc.*, 2020 WL 7319358, at *4–5 (N.D. Cal. Dec. 11, 2020) (finding plaintiff had assented to Ticketmaster Terms

[2] Accenture incorporates by reference herein Argument Section I.A of WhatsApp's and Meta's Motion to Compel Arbitration and Stay Proceedings Under 9 U.S.C. §§ 3-4. *See* ECF No. 37 at 5–7.

of Use after he clicked the "Sign In" button, which had text above stating "[b]y continuing past this page, you agree to the Terms of Use"); *Peterson v. Lyft, Inc.*, 2018 WL 6047085, at *2 (N.D. Cal. Nov. 19, 2018) (finding binding arbitration agreement between plaintiff and Lyft after plaintiff clicked "I accept" to the Terms of Service). Here, Plaintiffs expressly allege that they "clicked buttons signifying acceptance of WhatsApp's Terms of Service." Compl. ¶¶ 204–205.

And as WhatsApp and Meta explain in their motion—this is not an unconscionable contract of adhesion. *See* ECF No. 37 at 5–6. A contract is not "adhesive" if "there is an opportunity to opt out of it." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016). Here, WhatsApp's Terms of Service allow users to opt-out of the arbitration agreement "in writing postmarked within 30 days of the later of: (a) the date that you first accepted our Terms; and (b) the date you became subject to this arbitration provision." Compl., Ex. 1 at 12; *see also Kaplan v. The Athletic Media Co.,* 705 F. Supp. 3d 992, 1005 (N.D. Cal. 2023) (finding arbitration agreement allowing subscribers to opt out by mailing a written notice within 30 days was conscionable and enforceable). Thus, the arbitration agreement is valid and enforceable.

**B. The Arbitration Agreement Encompasses Plaintiffs' Claims.**

The arbitration provision in the WhatsApp Terms of Service is broad and covers Plaintiffs' claims. It states: "all Disputes (except for the Excluded Disputes), including those relating to, arising out of, or in any way in connection with your rights of privacy and publicity, will be resolved through final and binding arbitration." Compl., Ex. 1 at 11. "Disputes" is defined as any claim or cause of action "relating to, arising out of, or in any way in connection with our Terms or our Services." *Id.* at 8. And "Excluded Disputes" refers to a narrow category of disputes not applicable here—disputes "relating to the enforcement or infringement of your or our intellectual property rights" "or efforts to interfere with our Services or engage with our Services in unauthorized ways." *Id.* at 11. This is a broad and far-reaching arbitration agreement that is intended to cover all aspects of Plaintiffs' relationship with WhatsApp. *See Chiron*, 207 F.3d at 1131 (finding similar agreement was "broad" and "far reaching").

The Ninth Circuit and district courts in the Ninth Circuit consistently hold that arbitration agreements containing the phrase "any and all disputes arising under the" agreement "must be

interpreted liberally." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999); *see also Neurosigma, Inc. v. DeSalles*, 2014 WL 12803168, at *3 (C.D. Cal. Jan. 31, 2014) (same and discussing cases). "To require arbitration, [a party's] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Simula, Inc.*, 175 F.3d at 721. Courts also routinely find that agreements requiring parties to arbitrate "any dispute arising out of or relating to" a contractual agreement is "[i]ntend[ed] to reach all aspects of [the parties'] relationship." *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 732 (9th Cir. 2006); *see also Neurosigma, Inc.*, 2014 WL 12803168 at *3 (finding arbitration clause that provided "any controversy between the parties . . . arising out of or relating to this Agreement shall be finally settled in arbitration" was intended to "reach all aspects" of the parties' relationship). Under this type of agreement—the type here—the "standard for demonstrating arbitrability is not high." *Simula, Inc.*, 175 F.3d at 719.

Each of Plaintiffs' claims arise solely from their use of and relationship with WhatsApp—specifically, their allegations regarding encrypted messages sent on the WhatsApp platform. Plaintiffs allege that because of messaging in the media, messaging on the WhatsApp platform itself, and most importantly, messaging in the WhatsApp Terms of Service and Privacy Policy, Plaintiffs had a "reasonable expectation that their messages sent on the WhatsApp platform would not be viewed by, shared, seen, or stored by individuals who were not intended recipients of the messages." Compl. ¶ 5. But they allege that "in truth, WhatsApp and its parent company Meta secretly intercept, read, store, access, and/or view the supposedly private messages users send on the WhatsApp platform and conspire to permit Accenture employees to also read, access, and/or view supposedly private messages." *Id.* Plaintiffs clearly state that this alleged conduct forms the basis of all of the claims brought against the Defendants. *See id.* ¶ 7. Thus, the claims are encompassed by the broad arbitration provision.

There should be no doubt about the scope of arbitrability here, but if there is, the FAA requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25; *see also United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–583 (1960) (stating matter is arbitrable "unless it may be said with positive

assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"). And "in the absence of any express provision excluding a particular grievance from arbitration, only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Costless Wholesale, Inc. v. Amazon.com Services LLC*, 2023 WL 6224825, at *4 (C.D. Cal. Sept. 20, 2023) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)) (cleaned up).

Thus, all of Plaintiffs' claims, including the two asserted against Accenture, are encompassed by the valid and enforceable arbitration agreement.[3]

**C. Plaintiffs Are Estopped from Avoiding Arbitration.**

Naming Accenture as a defendant does not alleviate Plaintiffs' obligation to arbitrate all of their claims. Under California law, a signatory plaintiff is "equitably estopped from repudiating the arbitration clause contained in that agreement" (*Boucher v. All. Title Co.*, 127 Cal. App. 4th 262, 272 (2005)), when the claims against a non-signatory are "dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of the agreement containing the arbitration clause" (*JSM Tuscany,* LLC, 193 Cal. App. 4th at 1238 (citations omitted)). *See also Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 221–229 (2009) (discussing precedents on equitable estoppel); *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 874 (9th Cir. 2021); *Metalclad Corp. v. Ventana Env'tl Organizational P'ship*, 109 Cal. App. 4th 1705, 1713–17 (2003). "The fundamental point is that a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate by defining the forum in which the dispute will be resolved." *Boucher*, 127 Cal. App. 4th at 272.

Here, Plaintiffs' claims against Accenture are "dependent upon, or founded in and inextricably intertwined with" WhatsApp's Privacy Policy and Terms of Service. For instance, Plaintiffs assert that the Privacy Policy did not disclose Accenture's access to the purportedly encrypted messages (Compl. ¶ 35), and that "at all relevant times, Defendant Accenture conspired with the Meta and WhatsApp

---

[3] Accenture incorporates by reference herein Argument Section I.C of WhatsApp's and Meta's Motion to Compel Arbitration and Stay Proceedings Under 9 U.S.C. §§ 3-4 regarding Plaintiffs' request for a public injunction. *See* ECF No. 37 at 8–9. Plaintiffs' request for public injunctive relief does not impact the arbitrability of the claims.

Defendants" to engage in the alleged conduct in violation of the *Terms of Service and Privacy Policy* (*id.* ¶ 137 (italics added)). And most tellingly, Plaintiffs allege that "[u]nder the *uniform contract terms* with Defendants, the law of California will apply to each Class member's claims," *i.e.,* joining Meta, WhatsApp, and Accenture together under the Terms of Service when they believe it benefits them. *Id.* ¶ 104 (italics added).

Even further, the two claims against Accenture are predicated on the WhatsApp Terms of Service and Privacy Policy and the privacy expectations flowing from them. Plaintiffs allege that all Defendants are in violation of the California Invasion of Privacy Act (Count II) because the Defendants allegedly intercepted and/or intentionally tapped Plaintiffs' communications *without consent*. *See* Compl. ¶¶ 135–137. "To make out a section 631 claim, plaintiffs must sufficiently allege that they did not consent to the defendant's conduct." *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1177 (N.D. Cal. 2024). According to Plaintiffs, their lack of consent can be inferred because of the promises and representations made *in the Terms of Service and Privacy Policy*, namely that WhatsApp offers "end-to-end encryption for our Services. End-to-end encryption means that your messages are encrypted to protect against us and third parties from reading them." Compl. ¶ 65 (quoting Ex. 2); *see also id.* ¶¶ 34, 69–70, 121 (identifying places WhatsApp promises encrypted communications); *id.* ¶ 71 ("Accordingly, WhatsApp and Meta knowingly and willfully permitted themselves, their respective employees, Accenture Contractors and/or third parties to view the contents of communications users sent on the WhatsApp platform without the user's consent."); *id.* ¶ 76 ("Defendants understood that because WhatsApp has consistently marketed itself as a secure and private messaging service, reasonable users would expect Defendants to seek consent before undermining its consistent promises and representations that messages sent on WhatsApp cannot be viewed by anyone other than the intended recipient."). Thus, Plaintiffs' wiretapping claim is "dependent upon," "founded in and inextricably intertwined with" the very document—the Terms of Service—that contains the binding and applicable arbitration provision discussed above.

The same is true for Plaintiffs' claim for common law invasion of privacy against all Defendants (Count VII). For this claim, Plaintiffs must allege they had a reasonable expectation of privacy. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). To allege that, Plaintiffs again point to

promises and representations about end-to-end encryption made in the Terms of Service and Privacy Policy. *See, e.g.*, Compl. ¶¶ 1, 33–34, 42, 65, 121, 180, 194. And as with the wiretapping claim, Plaintiffs try to evade a consent defense by alleging that they "have not consented to the interception of their communications sent via WhatsApp, including because such interceptions are explicitly disclaimed by the WhatsApp Privacy Policy." *Id.* ¶ 121; *see also id.* ¶¶ 126, 186 (incorporating all preceding allegations into the claims made against Accenture).

Thus, Plaintiffs' causes of action are dependent upon, or founded in and inextricably intertwined with, the substantive obligations imposed by the Terms of Service and the incorporated Privacy Policy, and it would be inequitable to allow Plaintiffs to employ those terms to impose liability while avoiding the clear arbitration agreement contained therein. In other words, Plaintiffs cannot simultaneously rely on the Terms and Privacy Policy as the source of their privacy expectations while disclaiming the arbitration provision in those very Terms. The claims against Accenture should be sent to arbitration.

**D. This Case Must Be Stayed Pending Any Arbitration Ordered by the Court.**

Should this Court agree that the claims against Accenture are subject to arbitration, the Court "shall . . . stay the trial of the action." 9 U.S.C. § 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (stating a court must stay a lawsuit when there is an arbitrable dispute and a party requests a stay). Under the FAA, the Court has no discretion. *See id.*

However, even if the Court finds that the claims against Accenture are not arbitrable but nevertheless orders the claims against WhatsApp and Meta to arbitration, the claims against Accenture should still be stayed pending the arbitration. The Supreme Court has found that it is within the district court's discretion to stay cases against non-arbitrating parties. *See Moses H. Cone*, 460 U.S. at 20 n.23. Courts in the Ninth Circuit weigh three factors when deciding whether to stay claims brought against non-signatories to an arbitration agreement: "(1) the possible damages from granting a stay; (2) the hardship or inequity to a party if required to litigate; and (3) how a stay would affect the 'orderly course of justice,' including whether a stay will simplify or complicate issues in the pending litigation." *SolarPark Korea Co. v. Solaria Corp.*, 2023 WL 4983159, at *15 (N.D. Cal. Aug. 2, 2023). Courts generally stay claims "where the arbitrable claims predominate, or whether the outcome of the

nonarbitrable claims will depend upon the arbitrator's decision." *Id.* Indeed, it would "waste judicial resources and be burdensome upon the parties if the district court . . . were mandated to permit discovery, and upon completion of pretrial proceedings, to take evidence and determine the merits of the case at the same time as the arbitrator is going through a substantially parallel process." *Woods v. Airbnb, Inc.*, 2024 WL 4227746, at *2 (N.D. Cal. Sept. 17, 2024). And "allowing plaintiffs to pursue identical claims against [non-signatories] in court while plaintiffs concurrently arbitrate their claims with [their agreement counterparty] might undermine [the counterparty's] contractual right to resolve its disputes through arbitration." *SST Millennium LLC v. Mission St. Dev. LLC*, 2019 WL 2342277, at *5 (N.D. Cal. June 3, 2019).

All three factors weigh in favor of a stay here.

*First*, minimal damage would result from granting a stay as to the claims against Accenture in this Court while the claims against Meta and WhatsApp proceed in arbitration. The overwhelming majority of the allegations in this action are against Meta and WhatsApp, and there are **<u>no claims</u>** unique to Accenture. In arbitration, Plaintiffs would be permitted to litigate all of their claims against Meta and WhatsApp and conduct discovery into all of their allegations, including their allegations that Accenture allegedly provided content moderation services for Meta and WhatsApp.

*Second*, Accenture would be prejudiced were it required to litigate this action alone against Plaintiffs. All of Plaintiffs' claims and allegations are "dependent upon or founded in and inextricably intertwined" (*JSM Tuscany, LLC*, 193 Cal.App.4th at 1238), with WhatsApp's Terms of Service and Privacy Policy and its relationship with users. WhatsApp and its parent company Meta are the primary actors in this dispute, and Accenture would be prejudiced were it required to litigate this case alone against Plaintiffs while Meta and WhatsApp proceed in arbitration.

*Third*, a stay would promote the orderly course of justice in this case. As stated, Plaintiffs allege no conduct or claims unique to Accenture. At most, Plaintiffs allege **<u>three paragraphs</u>** regarding Accenture's alleged specific conduct. *See* Compl. ¶¶ 54–56. Further, only two of the twelve claims are brought against "all Defendants," and thus there can be no dispute that "arbitrable claims predominate." *SolarPark Korea*, 2023 WL 4983159 at *15. There is a near complete "overlap in factual allegations" between the case against Accenture and the case against Meta and WhatsApp, such

that there would be "unnecessary duplicative litigation" should this Court allow the claims against Accenture to proceed in Court while the arbitration takes place. *SST Millennium LLC*, 2019 WL 2342277, at *5.

In addition, allowing the claims against Accenture to proceed in this Court while the claims against Meta and WhatsApp proceed in arbitration poses a serious risk of inconsistent rulings between this Court and the arbitrator. *See, e.g.*, *SST Millennium LLC*, 2019 WL 2342277, at *5 (discussing risk of inconsistent rulings as relevant to stay analysis and granting stay). And a stay of the claims against Accenture would also serve the interests of judicial economy. If the claims against Meta and WhatsApp fail in arbitration, the claims against Accenture would necessarily fail as well. *See, e.g.*, *Woods*, 2024 WL 4227746, at *2 (finding that stay was appropriate in part because "the arbitrator will make findings as to the primary issues that would be presented" in the nonarbitrable claims). A stay pending the arbitration would simplify—or completely eliminate—the issues presented in this litigation.

Thus, the Court should stay the claims against Accenture if the claims against WhatsApp and Meta are compelled to arbitration.

## V. CONCLUSION

For these reasons, the Court should compel arbitration of Plaintiffs' claims against Accenture. If the Court decides not to send Plaintiffs' claims against Accenture to arbitration, it should stay litigation of those claims pending resolution of the arbitration involving Meta and WhatsApp.

DATED: June 9, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Douglas M. Fuchs*
Douglas M. Fuchs
Eric D. Vandevelde
Jeremy S. Smith

*Attorneys for Defendants Accenture PLC and Accenture LLP*

## CERTIFICATE OF SERVICE

On June 9, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/ Douglas M. Fuchs*
Douglas Fuchs