**KESSLER TOPAZ MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and-

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Joseph H. Meltzer (appearance *pro hac vice*)
jmeltzer@ktmc.com
Melissa L. Yeates (appearance *pro hac vice*)
myeates@ktmc.com
Tyler S. Graden (appearance *pro hac vice*)
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
Daniel S. Dicce (appearance *pro hac vice*)
ddicce@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Counsel for Plaintiffs and the putative Classes*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BRIAN Y. SHIRAZI and NIDA SAMSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., WHATSAPP LLC, ACCENTURE PLC, and ACCENTURE LLP,<br><br>Defendants. | Case No. 3:26-cv-02615-RFL<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS META PLATFORMS, INC. AND WHATSAPP LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS UNDER 9 U.S.C. §§ 3-4**<br><br>Complaint Filed Date: March 25, 2026<br><br>Date: July 14, 2026<br>Time: 10:00 AM<br>Courtroom: 15, 18th Floor<br>Judge: Hon. Rita F. Lin |

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 4

A. Plaintiffs Seek a Public Injunction to Enforce California's UCL and FAL .......... 4

B. The WhatsApp Terms of Service .......... 6

III. LEGAL STANDARD .......... 6

IV. ARGUMENT .......... 7

A. Plaintiffs' Claims Seeking Public Injunctive Relief Belong in this Court .......... 7

1. Plaintiffs Indisputably Seek Public Injunctive Relief .......... 7

2. The WhatsApp Terms of Service Unlawfully Purport to Waive Plaintiffs' Right to Seek Public Injunctive Relief .......... 8

B. Plaintiffs' Claims Should Not Be Stayed .......... 9

1. Plaintiffs' UCL and FAL Claims Against the Meta Defendants Should Not Be Stayed .......... 9

2. Plaintiffs' Claims Against the Accenture Defendants Are Not Subject to an Arbitration Agreement and Should Not Be Stayed .......... 11

V. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ballard v. Corinthian Colls., Inc.*,
2006 WL 2380668 (W.D. Wash. Aug. 16, 2006) .......... 12

*Blair v. Rent-A-Ctr., Inc.*,
2017 WL 4805577 (N.D. Cal. Oct. 25, 2017) .......... 9, 10, 11

*Blair v. Rent-A-Ctr., Inc.*,
928 F.3d 819 (9th Cir. 2019) .......... 7, 11

*Bold Ltd. v. Rocket Resume, Inc.*,
2023 WL 4157626 (N.D. Cal. June 22, 2023) .......... 2, 13

*Cal. Crane Sch. Inc. v. Google LLC*,
621 F. Supp. 3d 1024 (N.D. Cal. 2022) .......... 1, 4, 14

*Congdon v. Uber Techs., Inc.*,
226 F. Supp. 3d 983 (N.D. Cal. 2016) .......... 7, 10, 11, 12

*Franklin-Chomas v. Internet Referral Servs., LLC*,
2025 WL 2917158 (S.D. Cal. Oct. 14, 2025) .......... 14

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) .......... 13, 14

*Graves v. Arpaio*,
623 F.3d 1043 (9th Cir. 2010) .......... 10

*Gray v. SEIU*,
2020 WL 12228937 (N.D. Cal. Aug. 5, 2020) .......... 11

*McGill v. Citibank, N.A.*,
393 P.3d 85 (Cal. 2017) .......... *passim*

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) .......... 6, 7

*Olosoni v. HRB Tax Grp.*,
2019 WL 7576680 (N.D. Cal. Nov. 5, 2019) .......... 3, 8, 9

*Oracle Am., Inc. v. Procore Techs., Inc.*,
2025 WL 2223426 (N.D. Cal. Aug. 5, 2025) .......... 12, 15

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468, (9th Cir. 2024) .......... 9

*PZZT AZ LLC v. Waste Connections of Ariz. Inc.*,
2022 WL 19575807 (D. Ariz. May 4, 2022) .... 14

*Rappaport v. Fed. Sav. Bank*,
341 F. Supp. 3d 1039 (D. Ariz. 2018) .... 12

*Rissi v. T-Mobile USA, Inc.*,
2025 WL 1930003 (S.D. Cal. July 14, 2025) .... 12

*Sakkab v. Luxottica Retail N. Am., Inc.*,
803 F.3d 425 (9th Cir. 2015) .... 6

*Snarr v. HRB Tax Grp.*,
839 F. App'x 53 (9th Cir. 2020) .... 3, 8

*SolarPark Korea Co. v. Solaria Corp.*,
2023 WL 4983159 (N.D. Cal. Aug. 2, 2023) .... 12

*SST Millennium LLC v. Mission St. Dev. LLC*,
2019 WL 2342277 (N.D. Cal. June 3, 2019) .... 14

*Vianu v. AT&T Mobility LLC*,
2020 WL 12862941 (N.D. Cal. Mar. 2, 2020) .... 10

*Woods v. Airbnb, Inc.*,
2024 WL 4227746 (N.D. Cal. Sep. 17, 2024) .... 12

**Statutes**

9 U.S.C. § 2 .... 6

9 U.S.C. § 3 .... 4, 9

18 U.S.C. § 2511(1)(a) .... 10

18 U.S.C. § 2702(a)(1) .... 10

## I. INTRODUCTION[1]

The Court should reject Meta's wide-reaching effort to not only shield itself from all litigation, including Plaintiffs' claims for public injunctive relief which belong in this Court, but also stay Plaintiffs' separate claims against Accenture, which are indisputably not subject to any arbitration agreement.

As an initial matter, given that WhatsApp has elected to proceed in arbitration pursuant to its Terms of Service, Plaintiffs only seek to pursue their UCL and FAL[2] claims seeking public injunctive relief against Meta in this Court and do not oppose the motion to compel arbitration of the other claims against Meta.[3] Plaintiffs' claims seeking public injunctive relief on behalf of the California public must remain in this Court because WhatsApp's Terms of Service impermissibly bar Plaintiffs from pursuing public injunctive relief under *McGill v. Citibank, N.A.*, 393 P.3d 85, 94 (Cal. 2017) (holding that arbitration provisions which "purport[] to waive [plaintiff's] right to request in any forum such public injunctive relief . . . is invalid and unenforceable under California law"). Courts routinely find that such claims should proceed in court. *See id.*

Second, given that the UCL and FAL claims seeking public injunctive relief should proceed in this Court, the Federal Arbitration Act's ("FAA") mandatory stay is inapplicable and any discretionary stay (which has not been sought by Meta) is unwarranted.

Third, there is no basis to stay Plaintiffs' separate claims against the Accenture Defendants who engaged in their own misconduct and are *not* parties to the Terms of Service or any other arbitration agreement. *See Cal. Crane Sch. Inc. v. Google LLC*, 621 F. Supp. 3d 1024, 1033 (N.D. Cal. 2022) (denying motion to stay litigation against defendant who was not party to arbitration agreement). Staying these claims would only result in inefficiency and delayed resolution for

---

[1] Unless otherwise noted, all defined terms have the same meaning used in the Complaint (ECF No. 1), and all references to ¶ refer to paragraphs in the Complaint. The Meta and WhatsApp Defendants are referred to collectively herein as the "Meta Defendants" or "Meta." "Motion" or "Mot." refers to the Meta and WhatsApp Defendants' Notice of Motion and Motion to Compel Arbitration and Stay Proceedings Under 9 U.S.C. §§ 3-4 (ECF No. 37). "Accenture" means Defendants Accenture PLC and Accenture LLP.

[2] UCL refers to California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* FAL refers to and the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*

[3] Plaintiffs oppose the Motion to Compel Arbitration of their UCL (Count 11) and FAL (Count 12) claims. Plaintiffs do not oppose the Motion as to Counts 1-10.

Plaintiffs and the putative Classes. *Bold Ltd. v. Rocket Resume, Inc.*, 2023 WL 4157626, at *8 (N.D. Cal. June 22, 2023).

In order to draw users to WhatsApp, Meta has engaged in an extensive marketing campaign that promises potential users that they can use the WhatsApp platform to "[m]essage privately." ¶¶37-46. In its advertising, marketing materials, website, and even in Congressional testimony, Meta has made consistent and pervasive representations regarding the privacy and security of the messages sent on the WhatsApp platform. ¶¶1-4, 27-46, 64-71. Indeed, Meta even goes so far as assuring potential users on its website that the messages sent on the WhatsApp platform are end-to-end encrypted, and states this means "[o]nly you and the person you're talking to can read or listen to them, and no one else, not even WhatsApp." ¶1. Yet, contrary to Meta's public statements and advertising assuring potential users of the ability to send private messages on the WhatsApp platform, Meta maintained broad access to the contents of users' messages, which it shared with the Accenture Defendants.[4] ¶¶5-6, 47-63.

Despite widespread knowledge about WhatsApp's assurances of the privacy of messages sent on its platform, Accenture provided contractors to Meta for the explicit purpose of reviewing WhatsApp users' private messages and continued to permit these contractors to conduct this work even as it was clear to Accenture that Meta was permitting widespread access to users' messages contrary to its public assurances of privacy. ¶¶4-6, 35-36, 37-46, 53-59, 64-71. Accenture further invaded WhatsApp users' privacy as its employees accessed and viewed users' supposedly private messages. Indeed, Accenture managers routinely met with Meta managers to share "data regarding the results of their investigations based on their review of user messages." ¶¶54-56. Moreover, Accenture conspired with Meta to engage in non-consensual tapping and interception of users'

---

[4] While Defendants' unsupported allegations of a "copycat" complaint and purported "gamesmanship" do not merit a fulsome response, Plaintiffs will clarify the record on the following: (1) Plaintiffs filed their Complaint on March 25, 2026 because after the January 29, 2026 *Bloomberg* article was published detailing whistleblower accounts, Plaintiffs engaged in an extensive investigation of their claims, including working with experts and investigators to support their allegations; (2) Plaintiffs related their Complaint to the *Dawson* Complaint because they were required to do so under this Court's rules (*see* L.R. 3-12); and (3) Plaintiffs asserted independent claims against the Accenture Defendants based on Plaintiffs' investigation into Accenture's misconduct. None of Plaintiffs' actions were taken to evade the arbitration clause in the Terms of Service as Defendants improperly suggest.

communications sent on the WhatsApp platform. ¶137.

Plaintiffs seek to redress this substantial deception on behalf of the California public through a public injunction under the UCL and FAL. Specifically, Plaintiffs seek a public injunction prohibiting Meta from continuing to make untrue, false, deceptive, and misleading statements about the privacy and encryption of users' messages in WhatsApp's Privacy Policy and other public facing statements and advertisements. ¶¶262, 274. This injunction is essential to stop Meta from luring new WhatsApp users based on its false promises.

Notably, Meta does not dispute that the relief Plaintiffs seek under the UCL and FAL is a quintessential public injunction seeking to enjoin future violations of California's consumer protection statutes, which benefits the public as a whole. Nevertheless, it wrongly seeks to compel these claims to arbitration based on the Special Arbitration Provision[5] contained in WhatsApp's Terms of Service, which unlawfully waives Plaintiffs' statutory right to seek public injunctive relief, in violation of the *McGill* rule. *See McGill*, 393 P.3d at 94. Specifically, the Special Arbitration Provision in the Terms of Service requires Plaintiffs to bring all disputes against WhatsApp in arbitration while simultaneously limiting the scope of that arbitration to Plaintiffs' *individual* dispute with WhatsApp. Compl. Ex. 1 at 11 ("You and We Agree to Submit All Disputes to Binding ***Individual*** Arbitration.") (emphasis added). This language in the Special Arbitration Provision impermissibly prohibits Plaintiffs from obtaining public injunctive relief under California's consumer protection statutes and is invalid under California law. *Olosoni v. HRB Tax Grp.*, 2019 WL 7576680, at *3 (N.D. Cal. Nov. 5, 2019), *aff'd sub nom. Snarr v. HRB Tax Grp.*, 839 F. App'x 53 (9th Cir. 2020) (holding arbitration agreement that required "[a]ll disputes and claims . . . [to] be resolved through binding individual arbitration" barred plaintiff from seeking a public injunction.). Accordingly, Meta's efforts to prohibit Plaintiffs' request for public injunctive relief to be heard by this Court must be denied.

Meta further seeks to avoid an injunction stopping its deceptive statements regarding the private nature of WhatsApp messages by seeking a stay of these proceedings in their entirety, but no

[5] "Special Arbitration Provision" refers to the "Special Arbitration Provision for United States Or Canada Users" in WhatsApp's Terms of Service. Compl. Ex. 1 at 11.

stay is warranted. As a preliminary matter, Meta is not entitled to a stay under the FAA because Plaintiffs' claims seeking public injunctive relief are not arbitrable. 9 U.S.C. § 3 (a stay of proceedings under the FAA is required only where "the issue involved in such suit or proceeding is referable to arbitration under such an agreement."). Any discretionary stay of the UCL and FAL claims has not been sought and is unwarranted as it would only delay resolution and damage Plaintiffs.

Finally, Meta cannot turn its Terms of Service into a bar on Plaintiffs' claims against third parties. There is no basis to stay Plaintiffs' separate claims against the Accenture Defendants, which are not subject to any arbitration agreement. Enforcing the valid terms in Meta's Terms of Service is one thing—invoking the contract to prevent any potential third-party discovery burden on Meta is another,and is wholly unsupported by the contract's terms and Ninth Circuit law. Indeed, the harm to Plaintiffs of delaying resolution of their claims against Accenture far outweighs any purported harm to Meta. The claims against Accenture should promptly proceed in this Court. *Cal. Crane Sch. Inc.*, 621 F. Supp. 3d at 1033 (denying motion to stay proceeding against defendant with non-arbitrable claims where plaintiff asserted identical claims against both defendants).

Accordingly, Meta's motion to compel arbitration should be denied as to Plaintiffs' claims under the UCL and FAL, and no stay should issue.

## II. BACKGROUND

### A. Plaintiffs Seek a Public Injunction to Enforce California's UCL and FAL

WhatsApp—since 2014 a wholly owned subsidiary of Meta—operates its eponymous mobile and desktop messaging platform, through which users can send text and audio messages, make voice and video calls, and transmit photographs and other documents. ¶¶19-20, 23-26. From its inception, WhatsApp has assured the public that messages sent through its platform will remain private between senders and recipients. ¶¶1-4, 27-46. And in Congressional testimony, Meta founder and CEO Mark Zuckerberg told the public that when Meta acquired WhatsApp, it was maintaining the private and secure nature of the messaging platform. ¶39. Meta has since engaged in a years-long marketing campaign to draw potential users to the WhatsApp platform by assuring them that messages sent on WhatsApp remain secure and private. ¶¶1-2, 37-46. In marketing materials, Meta tells potential users that the WhatsApp platform is meant for "private messaging" and that "[y]our privacy is our priority."

¶¶41-42. These marketing materials also make the clear promise that "your personal messages . . . stay between you and the people you choose, meaning not even WhatsApp can see them." ¶42.

Notwithstanding these consistent representations about security and privacy, in truth, Meta its employees, and contractors from the Accenture Defendants could access and view users' purportedly private and encrypted messages. ¶¶5-6, 47-63. Specifically, WhatsApp has undisclosed "broad access to users' messages" which can be "viewed by employees and contractors simply by scrolling through a dashboard." ¶53.

Accenture conspired with Meta to engage in non-consensual tapping and interception of users' communications sent on the WhatsApp platform. ¶137. Indeed, Accenture provided contractors to Meta for the express purpose of reviewing users' messages, despite the widespread knowledge that Meta marketed WhatsApp as a secure and private messaging platform. ¶¶54-57. Accenture further engaged in an invasion of users' privacy by having its employees regularly access and view users' supposedly encrypted and private messages and by holding meetings with Meta employees to share "data regarding the results of their investigations based on their review of user messages." ¶56. The existence of this ability to view WhatsApp messages was recently revealed by whistleblowers to the U.S. Department of Commerce's Bureau of Industry and Security, who recounted that they and their colleagues had "broad access to the substance of WhatsApp messages that were supposed to be encrypted" and that some employees "had unfettered access to WhatsApp." ¶60.

Plaintiffs' Complaint asserts claims for violation of California's UCL and FAL arising from Meta's practice of secretly intercepting, reading, storing, accessing, and viewing the private messages that Plaintiffs and members of the public send on the WhatsApp platform despite Meta's numerous public assertions that users' messages are private. ¶¶5-6, 47-63, 251-53, 267. Under their UCL claim, Plaintiffs seek an injunction "to prohibit the Meta and WhatsApp Defendants from continuing to engage in the unlawful, unfair, or fraudulent business acts and practices described herein." ¶262. Specifically, Plaintiffs seek to enjoin Meta's unlawful misrepresentations and omissions set forth in its public facing statements about WhatsApp's privacy practices. ¶¶251-58. Plaintiffs further seek to "prohibit . . . Meta . . . from continuing to engage in the misleading and deceptive advertising practices described herein" under their FAL claim. ¶274. These misleading and deceptive advertising practices

include "untrue, false, deceptive, and/or misleading statements in connection with WhatsApp's Privacy Policy and other public facing advertisements as to WhatsApp's privacy practices. ¶¶266-71.

Under both their UCL and FAL claims, Plaintiffs seek public injunctive relief that would enjoin Meta from "informing users that WhatsApp does not and cannot intercept, read, store, access, and/or view WhatsApp users' communications with other users while, in truth, engaging in such conduct." Compl. at p. 51.

### B. The WhatsApp Terms of Service

WhatsApp required Plaintiffs to agree to its Terms of Service when they created their user profile and accessed the messaging app. ¶27. The Terms of Service provide that the "laws of the State of California govern our Terms, as well as any Disputes . . . which might arise between WhatsApp and you, without regard to conflict of law provisions." Compl. Ex. 1 at 8; *see also* ¶32. The Terms of Service further provide that for "WhatsApp user[s] located in the United States or Canada, our terms contain a binding arbitration provision," which requires those users "to resolve all disputes . . . through binding individual arbitration." Compl. Ex. 1 at 3.

The Special Arbitration Provision unlawfully purports to waive users' right to seek public injunctive relief under California's consumer protection statutes by mandating that the parties "submit all disputes to binding ***individual*** arbitration." *Id.* at 11 (emphasis added).

## III. LEGAL STANDARD

Under the FAA, an agreement to arbitrate can be found to be invalid "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, under Section 2, an agreement to arbitrate can be invalidated by "generally applicable contract defenses." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 432 (9th Cir. 2015) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). The FAA's policy "is to make 'arbitration agreements as enforceable as other contracts, but not more so.'" *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n.12 (1967)). Accordingly, where a state rule "would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id.*

Under California law, "a provision in *any* contract—even a contract that has no arbitration provision—that purports to waive, in all fora, the statutory right to seek public injunctive relief under the UCL, the CLRA, or the false advertising law is invalid and unenforceable." *McGill*, 393 P.3d. at 94. California's *McGill* rule "is a generally applicable contract defense derived from long-established California public policy" and "falls within the FAA's saving clause." *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 828 (9th Cir. 2019).

When deciding whether a discretionary stay is warranted,

> [T]he court should weigh the competing interests that will be affected, including: the possible damage which may result from granting the stay, the hardship or inequity which a party may suffer in being required to go forward, and 'the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Congdon v. Uber Techs., Inc.*, 226 F. Supp. 3d 983, 990 (N.D. Cal. 2016).

## IV. ARGUMENT

### A. Plaintiffs' Claims Seeking Public Injunctive Relief Belong in this Court

#### 1. Plaintiffs Indisputably Seek Public Injunctive Relief

The relief that Plaintiffs seek under their UCL and FAL claims—enjoining Meta from continuing to mislead the California public by falsely asserting that WhatsApp messages are private and encrypted while Defendants knowingly maintain broad access to the contents and substance of those messages and can intercept, read, store, access, and/or view WhatsApp users' communications—is quintessential public injunctive relief which would "'by and large' benefit[] the general public." *McGill*, 393 P.3d at 89. *See also* ¶¶ 248-75.

Tellingly, Defendants do not argue that the relief sought by Plaintiffs is not public injunctive relief under *McGill*. *See* Mot. at 8-9. Nor could they. The Ninth Circuit has explained that this type of relief, which "seeks to enjoin future violations of California's consumer protection statutes, relief oriented to and for the benefit of the general public," constitutes public injunctive relief under *McGill*. *Blair*, 928 F.3d at 831 n.3. Indeed, here, as in *McGill*, the "relief sought in this case would affect allegedly deceptive practices that aim to lure members of the public to use . . . [Meta's] services," and thus, the relief will "only incidentally" benefit Plaintiffs, who are now aware of Defendants' conduct. *Snarr*, 839 F. App'x at 55; *Olosoni., Inc.*, 2019 WL 7576680, at *4 ("Plaintiffs seek

injunctive relief to alter broadly-directed advertising they argue is misleading to the general public. This is precisely the type of public injunctive relief that is explicitly contemplated under the statutes at issue and that *McGill* and *Blair* teach cannot be waived in arbitration provisions.").

Because the injunction sought by Plaintiffs would provide "relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public," it thus seeks "public injunctive relief under the UCL . . . and the false advertising law." *McGill*, 393 P.3d at 90.

### 2. The WhatsApp Terms of Service Unlawfully Purport to Waive Plaintiffs' Right to Seek Public Injunctive Relief

The WhatsApp Terms of Service unlawfully attempt to prohibit WhatsApp users, including Plaintiffs, from seeking public injunctive relief under California's consumer protection statutes and these provisions are therefore invalid under California law. Specifically, a pre-dispute arbitration agreement "that purports to waive, in all fora, the statutory right to seek public injunctive relief under the UCL . . . or the [FAL] is invalid and unenforceable." *McGill*, 393 P.3d at 94. Yet, despite this clear law, WhatsApp's Special Arbitration Provision purports to do precisely that, by mandating that the parties must "submit all disputes to binding ***individual*** arbitration." Compl. Ex. 1 at 11 (emphasis added). Courts have held that arbitration provisions that require parties to submit to individual arbitration unlawfully restrain the right to seek a public injunction under *McGill*. Indeed, this case is on four squares with *Olosoni* where the court determined that the arbitration "provision[] . . . at issue . . . seek[s] to limit the nature of the relief plaintiffs may seek, allowing only for 'individual' claims" and thus "[o]n their face, [d]efendants' arbitration provisions therefore clearly contemplate waiver of the right to seek a public injunction and are thus unenforceable under California law." 2019 WL 7576680, at *3.

Importantly, the arbitration provision at issue in *Olosoni* is strikingly similar to the one at issue here. There, the agreement provided that "[a]ll disputes and claims . . . will be resolved through binding individual arbitration," and that "[a]ll arbitrations shall proceed on an individual basis." *Id.* Here, the Special Arbitration Provision similarly purports to limit the scope of the arbitration proceeding to individual WhatsApp users by requiring them to submit their disputes to "binding

*individual* arbitration." Compl. Ex. 1 at 11 (emphasis added). Because the Special Arbitration Provision both (1) prohibits Plaintiffs from asserting claims in any forum other than arbitration and (2) limits the claims that may be brought in arbitration to "individual" claims, these terms in conjunction bar Plaintiffs from seeking public injunctive relief. Just as in *Olosoni*, these provisions "are unenforceable because they purport to eliminate Plaintiffs' right under each statute at issue to seek a public injunction." 2019 WL 7576680, at *3.

Meta's authority does not compel a different result. For example, in *Patrick v. Running Warehouse, LLC*, the arbitration clause at issue did not require the parties to submit to *individual arbitration*, but rather simply required that any "[c]laims" be "brought solely in the parties' individual *capacity*." 93 F.4th 468, 478 (9th Cir. 2024) (emphasis added). Here, by limiting the scope of the arbitration itself to disputes that only seek individual relief, the Special Arbitration Provision unlawfully restrains the ability of Plaintiffs to pursue public injunctive relief under California's consumer protection statutes. Accordingly, because it bars Plaintiffs from seeking a public injunction, WhatsApp's Special Arbitration Provision is unenforceable under California law and Plaintiffs must be permitted to pursue their UCL and FAL claims seeking public injunctive relief in this Court. *See McGill*, 393 P.3d at 94.

### B. Plaintiffs' Claims Should Not Be Stayed

#### 1. Plaintiffs' Claims Against the Meta Defendants Should Not Be Stayed

First, given that Plaintiffs' UCL and FAL claims seeking public injunctions cannot be compelled to arbitration, the mandatory stay required by FAA Section 3 is inapplicable. 9 U.S.C. § 3 (a stay of proceedings under the FAA is required only where "the issue involved in such suit or proceeding is referable to arbitration under such an agreement."); *see also Blair v. Rent-A-Ctr., Inc.*, 2017 WL 4805577, at *6 (N.D. Cal. Oct. 25, 2017) (finding FAA's "mandatory [stay] provision . . . only applies to arbitrable claims or issues"). Thus, Meta's only argument in favor of a mandatory stay fails.

Second, Meta has not argued for a discretionary stay of Plaintiffs' UCL and FAL claims and

even if it had, no such stay would be warranted.[6] *Blair*, 2017 WL 4805577, at *6 (finding discretionary stay of claims seeking public injunctive relief not warranted even as other claim proceeded in arbitration).[7] Where, as here, Plaintiffs allege that Meta "continue[s] to cause injury to the general public and violate the laws of California by continuing to deceptively advertise its services" and "its privacy practices," any delay in seeking an injunction would cause significant damage to Plaintiffs and the California public. ¶¶251, 266-67, 274.

To this day, members of the public continue to become WhatsApp users and send messages on the WhatsApp platform but remain in the dark about the fact that Meta's continuous assurances regarding the privacy of WhatsApp messages are false. This irreparable damage should be stopped promptly by an injunction under the UCL and FAL. In contrast, Meta will not suffer any hardship or inequity from having two narrow claims seeking limited non-monetary relief adjudicated in this Court while Plaintiffs' other claims are decided by an arbitrator.

The claims that will be arbitrated and those that will remain in this Court are distinct, with distinct elements, unique factual and legal determinations, and different relief. For instance, Plaintiffs' Electronic Communications Privacy Act claim (which will be arbitrated) requires a determination about whether Meta "intentionally intercept[ed], endeavor[ed] to intercept, or procure[d] any other person to intercept or endeavor to intercept, any . . . electronic communication," 18 U.S.C. § 2511(1)(a), and their Stored Communications Act claim (which will also be arbitrated) requires resolution of whether Meta "knowingly divulge[d] to any person or entity the contents of a communication while in electronic storage," 18 U.S.C. § 2702(a)(1). Further, Plaintiffs will seek damages for these claims in arbitration. In contrast, Plaintiffs' UCL and FAL claims only require a

---

[6] By failing to argue in support of a discretionary stay of claims against Meta in the Motion, Meta has failed to carry its burden of demonstrating that such a stay is warranted. *Vianu v. AT&T Mobility LLC*, 2020 WL 12862941, at *4 (N.D. Cal. Mar. 2, 2020) ("The party requesting a stay has the burden of showing that circumstances justify a discretionary stay."). Meta has waived any such argument. *See Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived.").

[7] *See also Congdon*, 226 F. Supp. 3d at 990 (in deciding whether a discretionary stay is warranted, "the court should weigh the competing interests that will be affected, including: the possible damage which may result from granting the stay, the hardship or inequity which a party may suffer in being required to go forward, and 'the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.").

determination about whether Meta has engaged in unfair and/or deceptive practices or false advertising, and whether an injunction should be issued preventing this misconduct from continuing.

Moreover, no judicial resources will be saved by granting a stay as this Court will always have to determine whether a public injunction is warranted here. *See Congdon*, 226 F. Supp. 3d at 991 (finding proceeding with non-arbitrable claims in court while arbitrable claims proceeded in arbitration "would not result in a waste of judicial resources . . . [because] regardless of the outcome of the arbitration, the [non-arbitrable claims] will need to be litigated in this court."); *see also Blair*, 2017 WL 4805577, at *6 (finding plaintiff's claims seeking public injunctive relief should continue in court while other claims were arbitrated even though "there will no doubt be some minor overlap in the facts in arbitration and in court. . . . parallel proceedings will not be unduly duplicative or burdensome."). Given the substantial damage to the public that would result if a stay that would delay issuance of an injunction is granted and the comparative lack of harm to Meta, combined with the fact that there are no efficiencies to be gained from a stay, no stay should issue as to Plaintiffs' UCL and FAL claims.[8]

**2. Plaintiffs' Claims Against the Accenture Defendants Are Not Subject to an Arbitration Agreement and Should Not Be Stayed**

Meta's improper effort to stop litigation against Accenture, which it acknowledges is not a party to any arbitration agreement, should be rejected. *See* Mot. at 10-12. Importantly, "the Ninth Circuit has noted 'a preference for proceeding with the non-arbitrable claims when feasible' and a court should stay 'only when doing so would serve some legitimate interest of the parties or the court.'" *Gray v. SEIU*, 2020 WL 12228937, at *5 (N.D. Cal. Aug. 5, 2020) (quoting *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 Fed. App'x 412, 415 (9th Cir. 2002)). No such legitimate

[8] Solely in a footnote (Mot at 8 n.2), Meta argues that based on the severance clause in the Special Arbitration Provision, Plaintiffs' request for a public injunction should be severed from this litigation and determinations about liability under the UCL and FAL should be made by an arbitrator. However, the language used in the severance clause does not plainly demonstrate that the parties have chosen to sever issues of liability from requested relief. Rather, the Special Arbitration Provision states that either "[d]isputes (or only that request for relief)" which are found to not be arbitrable should proceed in Court. Compl. Ex. 1 at 11. Because this language acknowledges that an entire "[d]ispute" that is non-arbitrable should proceed in Court, the entirety of Plaintiffs' UCL and FAL claims should proceed in Court. *See Blair*, 928 F.3d at 828. At a minimum, Plaintiffs should be permitted to seek a preliminary injunction in this Court without awaiting any ruling from an arbitrator.

interest exists here. Instead, Meta's mere interest in stopping this litigation entirely cannot carry its burden of demonstrating that the Court should stay litigation against Accenture, a wholly separate entity which has no arbitration agreement with Plaintiffs. *Oracle Am., Inc. v. Procore Techs., Inc.*, 2025 WL 2223426, at *1 (N.D. Cal. Aug. 5, 2025) (denying motion to stay litigation against defendant who was not subject to arbitration agreement and noting "[t]he burden is on the movant to show that a stay is appropriate.").[9]

First, Plaintiffs will suffer substantial damage from a stay of their claims against Accenture as any such stay would likely be lengthy and indefinite.[10] Indeed, Meta seeks to stay the claims against Accenture until the conclusion of arbitration of complex claims against Meta. "Given that the end of the proposed stay would be triggered by an external event that is not time-limited, such a stay would be indefinite [and]. . . this . . . weighs against granting [a] stay." *Rissi v. T-Mobile USA, Inc.*, 2025 WL 1930003 at *4-5 (S.D. Cal. July 14, 2025) (denying motion to stay litigation against defendant whose claims were non-arbitrable until claims against separate defendant were arbitrated).[11] This delay of resolution of Plaintiffs' claims against Accenture constitutes significant damage and weighs in favor of denying a stay.

In contrast to the substantial harm to Plaintiffs, Meta has failed to show that it will suffer hardship or inequity if Plaintiffs proceed with litigation against Accenture—a wholly separate entity. Rather than demonstrating any actual harm, Meta makes a speculative argument that its discovery

[9] Meta relies on inapposite cases where the stay was granted as to claims being asserted against the *same* defendant who had separate claims subject to an arbitration agreement. *See Woods v. Airbnb, Inc.*, 2024 WL 4227746 (N.D. Cal. Sep. 17, 2024) (plaintiff did not oppose motion to stay, and plaintiff's arbitrable survivorship claims were entirely dispositive of non-arbitrable wrongful death claim brought against the same defendant); *Ballard v. Corinthian Colls., Inc.*, 2006 WL 2380668 (W.D. Wash. Aug. 16, 2006) (plaintiffs jointly brought claims against an identical set of defendants where a subset of plaintiffs were subject to arbitration agreements). Here, in stark contrast to these cases, Meta seeks to stay claims against a wholly different set of defendants. This case is not like *Rappaport v. Fed. Sav. Bank*, 341 F. Supp. 3d 1039, 1042 (D. Ariz. 2018) where the defendant whose claims would be litigated was the CEO of the defendant whose claims were being arbitrated and the litigation hinged on whether the CEO had lied about the reasons for the plaintiff's firing and the propriety of plaintiff's firing was the subject of the arbitration.

[10] Meta's assertion that Plaintiffs will suffer "zero harm or prejudice" (Mot. at 12) from a stay is wholly unsupported. *Congdon*, 226 F. Supp. 3d at 990.

[11] This indefinite length of the stay here distinguishes this case from *SolarPark Korea Co. v. Solaria Corp.*, 2023 WL 4983159, at *16 (N.D. Cal. Aug. 2, 2023) in which the court determined plaintiff suffered no harm from the stay where an arbitration was scheduled to commence in a few months and the court had already entered a preliminary injunction awarding interim equitable relief.

obligations in Plaintiffs' action against Accenture could exceed its discovery obligations in arbitration. *See* Mot. at 11-12. However, the mere fact that Meta may be required to engage in discovery in this litigation is insufficient to demonstrate hardship warranting a stay.[12] *See Bold Ltd.*, 2023 WL 4157626, at *9 (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005)) (rejecting defendant's argument "that they will suffer hardship because the discovery required . . . would be duplicative" because "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity'"); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *1 (N.D. Cal. Jan. 6, 2026) (rejecting argument that having to produce discovery in arbitration and litigation warranted a stay). Moreover, Meta's suggestion that it would be subject to more discovery as a third-party to Plaintiffs' litigation against Accenture than it would be as the defendant in arbitration is entirely speculative and unlikely. Regardless, Meta would still be subject to discovery in this matter once a stay was lifted. This demonstrates that Meta is simply seeking delay—not efficiency.

Further, Meta's protestations that permitting Plaintiffs to proceed with litigation against Accenture will somehow be an "end-run around the purpose" of their Special Arbitration Provision is absurd. Mot. at 11. Meta's Terms of Service cannot protect it from being subject to third-party discovery when other entities are sued. And Plaintiffs suing independent third-party entities based on their own misconduct is no end-run. It is Plaintiffs' right to recover from those entities that harmed them as Accenture has by conspiring to intercept users' supposedly secure and encrypted messages and by invading Plaintiffs' privacy by permitting its employees to view user messages and share data with Meta about the information gained from viewing those private messages. ¶¶54-56, 137.

Indeed, Meta's entire argument in support of a stay is founded on its incorrect assertion that Plaintiffs' "will be able to fully and fairly pursue their claims and allegations in arbitration." Mot. at 12. This position improperly ignores that Plaintiffs' claims against Accenture are not subject to arbitration and will always be tried in this Court. Meta's choice to arbitrate certain of Plaintiffs' claims

[12] This argument rings particularly hollow here where Meta will have discovery obligations in the related action *Dawson v. Meta Platforms et. al.*, No. 26-cv-00751 (N.D. Cal.) ("*Dawson*"). Given the fact that Meta will already be required to participate in discovery on similar issues should the Court deny the pending motion to dismiss in *Dawson*, Meta cannot actually demonstrate that having to also potentially participate in third-party discovery in this matter would be harmful.

against Meta cannot shield the separate Accenture Defendants from litigation and does not warrant a stay. *Cal. Crane Sch. Inc.*, 621 F. Supp. 3d. at 1033 (denying motion to stay proceeding against defendant with non-arbitrable claims and noting defendant had not shown that the "arbitrator's findings of fact or law . . . would be binding on [the] [c]ourt or otherwise have any impact on the non-arbitrable claims left [in court]."); *Franklin-Chomas v. Internet Referral Servs., LLC*, 2025 WL 2917158, at *6 (S.D. Cal. Oct. 14, 2025) (denying motion to stay and finding "this is not the case where a court compels arbitration of certain claims against one defendant and retains jurisdiction over other claims against the ***same*** defendant" and where therefore "efficiencies may be gained by a stay") (emphasis added).

Finally, Meta's suggestion that proceeding with both arbitration and litigation would result in "duplication of effort" or a "waste of judicial resources" is unfounded. Mot. at 10, 12. Particularly instructive here is *California Crane School Inc.*, where plaintiff asserted the exact same claims against both a defendant with arbitrable claims and a defendant with non-arbitrable claims and alleged a conspiracy between the two defendants. 621 F. Supp. 3d at 1028. The court denied a motion to stay claims against the defendant with non-arbitrable claims finding that while both the arbitrator and court would need to make determinations on the same facts and law, "in a case like this, that redundancy [is] inevitable" and that because plaintiff and the remaining defendant would "need to eventually litigate the remaining non-arbitrable claims irrespective of whatever happens in the arbitration, proceeding with this lawsuit would not waste judicial resources." *Id.* at 1033; *see also Gilligan*, 2026 WL 32259, at *1 ("Regardless of the outcome of the arbitration, Plaintiffs' claims will need to be litigated in this Court. Nor has [defendant] shown that proceeding with the non-arbitrable claims here would negatively impact the parallel arbitration.").[13]

---

[13] Because Plaintiffs' claims against Accenture will always be tried in this Court and will not be determined by the outcome of any arbitration against Meta, this matter is distinguishable from cases cited by Meta where the arbitration outcome would be determinative of the stayed litigation and/or where the litigation was truly incidental to the claims being arbitrated. *SST Millennium LLC v. Mission St. Dev. LLC*, 2019 WL 2342277, at *1, *5 (N.D. Cal. June 3, 2019) (plaintiff alleged non-arbitrating defendants were "alter ego[s]" of arbitrating defendant and only "secondarily liable" due to their participation in arbitrating defendant's scheme and "it [was] very unlikely the stayed claims [would] *ever* proceed because if [plaintiff] satisfies an award . . . there is no basis on which to proceed with the secondary liability claims"); *PZZT AZ LLC v. Waste Connections of Ariz. Inc.*, 2022 WL 19575807, at *2 (D. Ariz. May 4, 2022) (staying action pending resolution by certified public

Ultimately, Plaintiffs will suffer harm from the requested indefinite delay of their litigation against Accenture whereas Meta will suffer no harm and will simply be subject to the same types of determinations and discovery it will always be subject to as a third-party to Plaintiffs' litigation against Accenture. Moreover, because Plaintiffs' claims against Accenture will always be tried in this Court, no efficiencies are gained from staying those claims. Accordingly, Meta has failed to meet its burden of demonstrating that a stay of the proceedings against the Accenture Defendants is warranted. *See Oracle Am., Inc.*, 2025 WL 2223426, at *3 ("Indeed, in circumstances where one defendant has an arbitration agreement and another does not, 'the possibility that parallel proceedings could produce inconsistent results is simply inevitable. Without more, that risk does not require granting a stay.'") (quoting *Cal. Crane Sch., Inc.*, 621 F. Supp. 3d at 1034).

As such, Meta's request to stay Plaintiffs' claims against Accenture should be denied.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Meta's Motion to Compel Plaintiffs' UCL and FAL claims to arbitration, deny the requested stay of the UCL and FAL claims, and deny Meta's request to stay Plaintiffs' claims against the Accenture Defendants.

Dated: June 9, 2026

Respectfully submitted,

**KESSLER TOPAZ MELTZER & CHECK, LLP**

*/s/ Melissa L. Yeates*

Joseph H. Meltzer (appearance *pro hac vice*)
jmeltzer@ktmc.com
Melissa L. Yeates (appearance *pro hac vice*)
myeates@ktmc.com
Tyler S. Graden (appearance *pro hac vice*)
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
Daniel S. Dicce (appearance *pro hac vice*)
ddicce@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

accountant of EBITDA calculation required for determination of both arbitrable and non-arbitrable claims).

-and-

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001

*Counsel for Plaintiffs and the putative Classes*